No. 93-386

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

GERALD F. ANDERSON,

     Plaintiff and Appellant,

v.

RICHARD L. JOHNSON,

     Defendant and Respondent.

FILED

MAR 1 - 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Terry G. Sehestedt, Attorney at Law,
Missoula, Montana

     For Respondent:

          Douglas J. Wold, Wold Law Firm,
Polson, Montana

Submitted on Briefs:  November 23, 1993

Decided:  March 1, 1994

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Plaintiff/Appellant, Gerald F. Anderson, appeals from a judgment of the Twentieth Judicial District Court, Lake County, finding respondent, Richard L. Johnson, the title owner of property leased by Anderson from Johnson near Flathead Lake, and awarding Johnson damages and costs of suit.

Affirmed.

The parties raise three issues:

1. Did the District Court err when it denied Anderson's motion for partial summary judgment based on his alternative theories of conclusiveness of deed or adverse possession?

2. Did the District Court err when it found that the September 5, 1973 deed from Anderson to Johnson was executed after the September 7, 1973 deed from Johnson to Anderson?

3. Did the District Court err when it found that Anderson's possession of the property was permissive and not adverse?

Since about 1958, Anderson and Johnson had been friends. In 1972, Johnson was owner of approximately 15 acres near Flathead Lake as purchaser under a contract for deed. Johnson informally divided the tract into lots with the intent to offer ten to 20-year leases for the lots' recreational uses.

On August 4, 1972, Johnson and Anderson entered into two nonrenewable written ten-year leases for two of the lots commencing August 1, 1972. The agreements required Anderson to pay Johnson a total of $40 per month as rental, to pay all taxes and assessments imposed on improvements placed on one of the lots, and to pay a

2

pro rata share of any increases in real property taxes for the years 1974 through 1982. Further, the leases afforded Anderson the first opportunity to purchase the lots in the event Johnson platted and subdivided the lots during the lease period.

In late fall 1972, or early 1973, Anderson constructed a nonpermanent geodesic dome on the leased property as provided in the lease agreement. In May 1973, Johnson formally surveyed the two leased lots and in June bought the two lots outright from the seller.

In August 1973, Anderson asked Johnson to loan him the title to the leased property so that Anderson could give a mortgage on the lots to secure a loan to fund his new business enterprise in Colorado. Johnson agreed as a gesture of their friendship and because Anderson's father represented to Johnson that he would stand behind the obligation.

The parties orally agreed to structure the loan of title as follows: Anderson's father, an attorney, simultaneously prepared two deeds for conveyance of the lots. He sent one deed to Johnson which required Johnson's signature and conveyed the two lots to Anderson. Johnson dated and signed that deed on September 7, 1973. Johnson mailed the September 7 deed back to Anderson's father. As security for the loan of the title, Anderson's father had prepared a reciprocal deed which transferred the two lots from Anderson back to Johnson, and which he sent to Anderson in Colorado for his signature. The deed from Anderson to Johnson is dated September 5, 1973, and notarized by Anderson's father on that same date. The

3

September 5 deed was a security interest for the loan of the title which Johnson was to put into safekeeping. Anderson or his father recorded the September 7 deed on September 14, 1973. The record is not clear as to whether Johnson received the September 5 deed before or after he had sent the September 7 deed back to Anderson's father. The parties orally agreed that Johnson was free to record the deed from Anderson to Johnson at any time, but subject to the mortgage. However, Johnson originally planned to record the September 5 deed when Anderson paid off the mortgage obligation. Soon thereafter, Anderson mortgaged the two lots to a Polson bank.

From 1972 to 1975, Anderson paid the $40 monthly rent on the lots. In 1975, however, Anderson discontinued his rental payments after the parties could not reach terms for sale of the lots to Anderson. The parties did not enter into any written agreement regarding the sale of the lots to Anderson. Their friendship deteriorated. Anderson continued to pay the property taxes on the two lots after 1973, pursuant to the rental agreement. Johnson did not attempt to collect past due rent from Anderson because he knew Anderson became unable to pay both the lease payments and his mortgage payment on the lots. In the late 1970's, Johnson attempted to collect the past due rent from Anderson with no success. Johnson periodically contacted the Polson bank to check on the status of Anderson's mortgage. Anderson's mortgage payments had been kept current.

In early 1979, Anderson left the property after cold weather froze up the dwelling. That year he asked Johnson to provide $7000

4

in "consideration" to take back the two lots subject to the unpaid balance on the mortgage. Johnson refused, denying any obligation to do so.

Between 1979 and 1985, Johnson did not hear from Anderson or see him on the property. In 1980 or 1981, Johnson fenced off the two lots from the rest of his property which closed off prior access to the two lots. In addition, Johnson put up "no trespassing" signs on the fences. The signs faced his adjacent lots. He shut off the water supply to Anderson's dwelling after it froze.

Anderson failed to pay all the property taxes on time and in 1979 the property was sold for taxes but later redeemed.

In about 1985, Anderson conveyed the lots to a third party as security for another loan, in contravention of the lease and without Johnson's approval. Also in 1985, Anderson informed Johnson that he intended to claim the property as his own. In 1992, Johnson learned that the third party had transferred the property back to Anderson. In August 1992, Johnson also learned that Anderson had received a slash permit and cut more than 15 trees from the property, in contravention of the lease agreement. Anderson received between $900 and $1000 for the timber. Johnson had not given Anderson permission to cut the trees.

On August 17, 1992, Johnson recorded his September 5, 1973 deed from Anderson to reclaim title to the two lots.

In the Twentieth Judicial District Court, Anderson sought cancellation of the September 5, 1973 deed, or alternatively for

5

declaratory relief that he was the owner of the property, and sought damages, costs, and fees. Johnson counter-claimed for damages, fees, and costs. On March 31, 1993, Anderson filed a motion for partial summary judgment to quiet title in him to the two lots and denounced any fraud on his part. Johnson cross-motioned for partial summary judgment seeking a determination that he was the lawful owner of the two lots as a matter of law. On April 28, 1993, the court denied both motions, finding "a plethora of genuine issues of fact and [that] summary judgment was not appropriate."

At the time of the bench trial on May 10, 1993, Anderson owed the Polson bank $3975.77, plus interest, on the mortgage.

On May 27, 1993, the District Court found that Johnson had superior title to the two lots after recording the September 5, 1973 deed on August 17, 1992, because Anderson had given Johnson the September 5, 1973 deed as security for the loan of the title, and that Johnson had been free to file it at any time. The court awarded Johnson fee simple title of the two lots free and clear from all encumbrances, including Anderson's $3975.77 mortgage. However, the court granted Anderson the option of making payments upon the encumbrance and keeping it free from default. Finally, the court awarded Johnson his costs of suit.

On June 25, 1993, Anderson filed this appeal from denial of his motion for summary judgment and from the District Court's findings of facts and conclusions of law and judgment.

6

## ISSUE 1

Did the District Court err when it denied Anderson's motion for summary judgment based on his alternative theories of conclusiveness of deed or adverse possession?

At the hearing for summary judgment, Anderson argued that summary judgment was appropriate because the material facts before the court were: (1) the explicit and unambiguous deeds that conveyed Johnson's property to Anderson; (2) Johnson's acknowledgment that there were no other writings concerning the transfer of title; (3) Johnson's September 7 deed to Anderson gave Anderson title as the last deed signed and delivered; and (4) that in the alternative, Anderson could claim superior title under the theory of adverse possession.

Summary judgment is appropriate:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), M.R.Civ.P.

Although the September 7 deed explicitly and unambiguously transferred the two lots from Johnson to Anderson, in like manner, the September 5 deed transferred the lots from Anderson back to Johnson. These facts could not conclusively establish superior title in Anderson because the parties disputed the facts involving the signing and delivery of the deeds, and the legal effect of the transfers. The District Court properly denied Anderson's motion

7

for summary judgment because the parties presented genuine issues of fact and law in regards to which deed controlled.

In addition, Anderson argues that summary judgment was appropriate because Johnson acknowledged that the parties entered no written agreement other than the two deeds. The court heard oral argument that the parties had structured the loan of the deed through an oral agreement. The parties had agreed to a certain transaction in the exchange of the deeds and the conditions under which Johnson could record his reciprocal deed. However, on summary judgment, the parties disputed the terms of the oral agreement, thereby raising genuine issues of material fact. Thus, the District Court properly denied Anderson's motion for summary judgment despite the absence of writings other than the deeds.

Anderson also argues that summary judgment was appropriate because the September 7 deed from Johnson to him conclusively established his superior title to the property as the last deed signed and delivered. The court disagreed and applied the belief that where Anderson had given the September 5 deed to Johnson as security for the loan of the title, the September 7 deed controlled, being the last recorded deed. The court noted that the date of transfer of real property is presumed to be the date of recording the deed. Anderson asserted that the court misstated the applicable law. As a result, the court properly denied summary judgment because of the genuine issues of law presented.

Finally, Anderson asserts that summary judgment was appropriate because he had superior title under a theory of adverse

8

possession. Anderson asserts that because he had breached the lease agreements by conveying the property to a third party and cutting down trees, his leasehold possession had become hostile and adverse. The court found sufficient evidence to refute Anderson's claim that his possession of the lots was hostile and adverse to Johnson's fee simple interest. In fact, the evidence presented could have supported the conclusion that Anderson's possession had been purely permissive. The court properly denied Anderson's motion for summary judgment on Anderson's adverse possession claim.

From the foregoing, we hold that the District Court did not err when it denied Anderson's motion for summary judgment based on his alternative theories of conclusiveness of deed or adverse possession.

### ISSUE 2

Did the District Court err when it found that the September 5, 1973 deed from Anderson to Johnson was executed after the September 7, 1973 deed from Johnson to Anderson?

We will uphold the findings of the trial court if they are not clearly erroneous. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603. In so doing, we also will consider whether the findings are supported by substantial credible evidence and the trial court has not misapprehended the effect of the evidence, and whether a mistake has been committed. Interstate Prod. Credit Ass'n. v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

9

Anderson argues that the timing of the execution and delivery of the two deeds in 1973 should determine which party now may claim rightful title to the two lots. Anderson asserts that the District Court erred when it found that Johnson did not receive the September 5 deed until after he had sent the September 7 deed back to the Anderson law office. The transmittal letter from Anderson's father and the accompanying deed which Johnson was to sign were dated September 5, 1973. Johnson testified that he was not certain whether he had received the September 5 deed before or after mailing the September 7 deed. Anderson contends that as the last deed signed and delivered, the September 7 deed conclusively transferred title to him.

Anderson is correct to assert that a grant of real property duly executed is presumed to have been delivered at its date. Section 70-1-509, MCA. However, the District Court heard testimony that the exchange of deeds was intended by the parties to secure a loan of the title to the two lots, and that Johnson had the right to record the September 5 deed at any time, subject to the mortgage.

We have held that an unrecorded deed affecting title to land is valid between the parties. Blakely v. Kelstrup (1985), 218 Mont. 304, 306, 708 P.2d 253, 254 (citing § 70-21-102, MCA). In Blakely, we reasoned that although duly recording a deed has the purpose of giving notice to subsequent purchasers and encumbrancers and of establishing priority, it does not convey title unless the parties have so intended. Blakely, 708 P.2d at 254.

10

The court rejected Anderson's argument that the parties' transaction was a sale. It found the September 7 deed, although duly recorded by Anderson, was subject to the conditions of the parties' oral security agreement, made as part of the loan of the deed transaction.

When interpreting an instrument, the Montana code also provides for consideration of circumstances surrounding its execution:

> For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge be placed in the position of those whose language he is to interpret.

Section 1-4-102, MCA.

Similarly, the Montana code provides:

> (1) When terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing . . .
>     . . . .
> (2) But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in 1-4-102, or to explain an extrinsic ambiguity or to establish illegality or fraud.
> (3) The term "agreement" includes deeds and wills as well as contracts between parties. [Emphasis added].

Section 70-20-202, MCA; *see also* § 28-2-905, MCA.

The court properly heard testimony about how the deed exchange came to be and the absence of an exchange of consideration for sale of the two lots.

11

More important, grant of the property in the September 7 deed did not conclusively establish title in Anderson because on September 5, 1973, Anderson did not have a fee simple interest to convey to Johnson. At that time, Anderson had only a lessee's possessory interest in the two lots. Although the September 5 deed was perhaps the first deed executed and delivered, the parties did not intend anything other than a simultaneous exchange of deeds, the effect of which was to temporarily convey title in the two lots to Anderson. Only after Johnson transferred the title to Anderson on September 7, 1973, did Anderson have a fee simple interest in the property to reconvey to Johnson. Even then, Anderson's fee simple interest was subject to the parties' security deed arrangement.

Anderson's argument that the September 7 deed granted him rightful title to the two lots denies the parties' oral agreement as found by the District Court. Even if Anderson ignores the parties' oral agreement, Montana law provides that "an unrecorded instrument is valid as between the parties and those who have notice thereof." Section 70-21-102, MCA. The order of events involving the exchange of the simultaneous and reciprocal deeds was irrelevant to the issue of which party retained fee simple title at any given time throughout the 20-year transaction.

The court's finding that the parties' transaction was intended as a disguised loan and that Johnson could record his deed from Anderson at any time is supported by substantial credible evidence. We conclude that the District Court did not misapprehend the effect

12

of the evidence, and we are not left with a definite and firm conviction that a mistake was committed.

We hold that the District Court did not err when it found that Johnson did not receive the September 5 deed until after he had sent the September 7 deed back to the Anderson law office.

### ISSUE 3

Did the District Court err when it found that Anderson's possession of the property was permissive and not adverse?

Anderson argues that the District Court's finding that his "use and occupation of the two lots had been open and actually known of by [Johnson] and with [Johnson's] permission" was clearly erroneous. Anderson asserts that even if the September 5 deed is controlling, Johnson owns the property subject to Anderson's adverse possession. He argues that because Johnson took no action when he breached the lease agreement by conveying the lots to a third party and cutting down trees on the lots, his lessee's possession ripened into adverse possession five years after the lease expired in 1982. Anderson misapplies the law of adverse possession in Montana.

Adverse possession of real property in Montana under a claim founded on an instrument requires that the claim be exclusive of any other right. The applicable statute provides in pertinent part:

> When it appears that the occupant or those under whom he claims entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument as being a conveyance of the property in question or upon the decree or judgment

13

of a competent court and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment or of some part of the property under such claim for 5 years, the property so included is deemed to have been held adversely . . . . [Emphasis added].

Section 70-19-407, MCA.

The record is clear that the parties considered the September 5 deed conveyed by Anderson to Johnson as security for Johnson's loan of the title to the property to Anderson and that Johnson was entitled to record that deed at any time. As a result, Anderson's claim to the two lots was not exclusive of Johnson's right to repossess the lots after September 7, 1973. In addition, Anderson entered into possession of the lots only through the 1972 lease agreement, not through the 1973 written conveyance instrument, as the statute requires. Therefore, Anderson's claim that his lessee's possessory interest ripened into adverse possession is misplaced.

We hold that the District Court did not err when it found that Anderson's possession of the property was permissive and not adverse.

Affirmed.

_William E. Hunt_
Justice

14

We concur:

_John Conway Harrison_

_Terry Trieweiler_

_____

_____
Justices

March 1, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Terry G. Sehestedt
Attorney at Law
P.O. Box 8281
Missoula, MT  59807-8281

Douglas J. Wold, Esq.
Wold Law Firm, P.C.
P.O. Box 1212
Polson, MT  59860-1212

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy