No. 95-023

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

McCALIF GROWER SUPPLIES, INC.,
A California corporation,

Plaintiff and Respondent,

-v-

WILBUR REED, a/k/a BILL REED,
d/b/a REED'S GREENHOUSE,

Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard R. Buley, Tipp & Buley, Missoula, Montana

For Respondent:

Bruce L. Hussey, Missoula, Montana

FILED

JUL 2 5 1995

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   May 11, 1995

Decided:   July 25, 1995

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a decision by the Fourth Judicial District Court, Missoula County, in favor of the plaintiff. We reverse and remand.

We consider the following issues on appeal:

I. Did the District Court err by failing to address defendant's counterclaim for consequential and incidental damages?

II. Did the District Court err in awarding plaintiff attorney fees because defendant should have been awarded judgment and neither statutes nor contract call for such an award?

Plaintiff and respondent, McCalif Grower Supplies, Inc. (McCalif) is a California broker which provides the supply and shipping of plants from growers to wholesale greenhouses. Defendant and appellant, Wilbur Reed (Reed) operates a small greenhouse in Missoula, Montana known as Reed's Greenhouse. McCalif and Reed had been involved in a business relationship for approximately 10 years. Reed would put in an order and McCalif would purchase the plant materials from growers and have the growers ship the plants to its customers such as Reed.

Reed had received orders from various retail outlets such as K-Mart and Ernst for Christmas poinsettias. On June 2, 1992, Reed then ordered poinsettia cuttings from McCalif. Reed ordered 10% more plants than the total number ordered from it by its various retail customers.

Upon receiving Reed's order, McCalif ordered the plants from Chipsea Greenhouses in Lafayette, Colorado which directly shipped

2

them to Reed. The shipment of poinsettia cuttings were received by Reed on August 11, 1992. When accepting the shipment at the airport, a Reed employee could find no damage to the boxes containing the cuttings. However, when the boxes were opened, it was clear that many of the poinsettias were ruined because they had not been packed properly and were subsequently damaged. Poinsettias are unstable and tender plants and any damage will cause delayed maturity or will kill them.

Reed reported the damage within 24 hours to McCalif. McCalif told Reed to file a claim with the carrier, Delta Airlines. Reed filed a claim and received $924.66 compensation from Delta. McCalif also informed Reed that because it was so late in the season, it could not provide replacement plants to Reed.

Reed refused to pay $3,027.09 for the marketable plants, contending that he had lost $8,683.95 on the sale of the unmarketable plants and was entitled to offset the amount owed against his damages. Reed also testified that he lost the contracts with three Ernst stores when Reed failed to supply them according to their contracts.

McCalif filed an action against Reed for payment of the money due it for the poinsettias. Reed answered denying that he owed any amount to McCalif and counterclaimed against McCalif for incidental and consequential damages under the Uniform Commercial Code (hereinafter UCC) because of McCalif's failure to deliver according to their contract.

3

A non-jury trial was held on September 6, 1994, and the District Court entered its findings and conclusions on September 7, 1994, in which the court ordered Reed to pay McCalif $3,223.56 and awarded attorney fees to McCalif in the amount of $510.

Reed then moved to amend the findings and conclusions because of the failure of the District Court to consider his counter claims. The District Court entered an amended judgment, which did not grant relief to Reed but did award interest at 10% to McCalif.

Reed appeals from the amended judgment.

I.

Did the District Court err by failing to address defendant's counterclaim for consequential and incidental damages?

Reed argues that McCalif breached the warranties of merchantability and fitness for a particular purpose by not sending the ordered poinsettias. Reed further contends that McCalif cannot waive or limit these warranties after the sale has taken place. According to Reed, our statutes put the risk of liability on the seller until the goods are accepted by the buyer. Reed argues that he rejected the shipment within 24 hours and is not responsible legally to pay for the rejected shipment.

McCalif argues that Reed did not reject the goods until November 27, 1992, a date too far removed from the August delivery date to be an effective refusal of the goods. Further, McCalif argues that as the seller it is not liable for damage to the goods as long as it delivers them safely to the carrier. McCalif also

4

contends that its contract with Reed specifically limits the warranties for a particular purpose and merchantability.

The District Court made the following Findings of Fact which are essentially controlling in this case:

4. Reed's Greenhouse contacted McCalif in June, 1992, and placed an order for poinsettia cuttings. Their order specified the variety selection, quantity, size, date of shipment and the shipping method for a total price of $4,475.60. The order was processed immediately and the cuttings ordered from Chipsea, Inc., of Lafayette, Colorado for shipment on August 10, 1992.

5. The Reeds received the shipment on August 11, 1992. At the time of receiving the shipment, Reed's driver, Jeff Hausauer, did not see any obvious damage to the boxes which contained the poinsettias. When the poinsettias were taken to Reeds Greenhouse and opened, it was apparent that several of the red poinsettias were ruined. Jeff Hausauer testified that the poinsettia flats were not packed in the shipping crates with materials that would keep the flats from moving and disturbing the plant materials. The damage to the plants is through the negligence of the shipper and the carrier and not the fault of Defendant Reed.

6. When it was apparent that there was no way to save several hundred of the red poinsettias, Maria Reed called McCalif to inform them of the damage. The agent of McCalif to whom Maria Reed spoke informed her that there were no red poinsettias available to replace the damaged plants, but they may have been able to find some white poinsettias. However, since eighty (80%) of the market for poinsettias during the holidays is for red poinsettias, that was unacceptable. Maria Reed was further informed by McCalif to file a claim with Delta Airlines for the damages, which Reeds did.

7. The Defendant received compensation from Delta Airlines in the amount of $924.66 - $720 for plant damage and $204.66 for shipping refund.

8. There was no written contract between the parties which limited McCalif's liability or in any way waive or exclude the implied warranties of fitness for a particular purpose and implied warranty of merchantability. . . .

9. Defendant Reed ordered a total of eight thousand twenty poinsettias (8,020) from Plaintiff McCalif. Six thousand three hundred seventy (6,370) of those plants were of the red variety (See Exhibit 1). Two thousand two hundred one (2,201) of the six thousand three hundred seventy (6,370) red poinsettias were damaged to the

5

extent they could not be sold, leaving Defendant Reed only four thousand one hundred sixty-nine (4,169) red poinsettias. Defendant Reed had five thousand eight hundred nineteen (5,819) marketable plants for the Christmas season.

The District Court then calculated the value of the undamaged 5,819 poinsettias at a total of $3,027.09 plus box and drayage charges of $196.47.

We have reviewed the record, including the transcript, and conclude that there is substantial, largely uncontradicted evidence which supports each of the above described findings of fact. This Court will uphold findings of a trial court if they are not clearly erroneous. Anderson v. Johnson (1994), 264 Mont. 66, 870 P.2d 59. Our next step is to apply the above-described findings of fact to the law of the case. We note that the District Court did not consider the counter claims on the part of Reed, but only entered conclusions of law which awarded damages to McCalif in the amount of $3,223.56, computed as above set forth. It is clear that this transaction is subject to the Uniform Commercial Code, Title 30, chapter 2. The following code section establishes the general obligation of the parties:

**30-2-301. General obligation of parties.** The obligation of the seller is to transfer and <u>deliver</u> and that of the buyer is to accept and pay in accordance with the contract (Emphasis added.)

It therefore was the obligation of McCalif to transfer and deliver the poinsettias to Reed.

With regard to Reed's right to reject a portion of the poinsettias, the following section provides:

6

**30-2-601. Buyer's rights on improper delivery.** . . . if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may:
    (a) reject the whole; or
    (b) accept the whole; or
    (c) accept any commercial unit or units and reject the rest.

The record demonstrates that Reed accepted a portion of the commercial units of poinsettias and rejected the rest. The record further demonstrates, without contradiction, that Reed notified McCalif within 24 hours.

With regard to warranty the UCC states:

**30-2-314. Implied warranty--merchantability--usage of trade.** (1) . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

McCalif as seller therefore impliedly warranted that the plants were merchantable and fit for their particular purpose, which was planting in order to resell to retail outlets. While these warranties may be limited if there is an exclusion in writing, the District Court found there was no such written agreement between the parties as mentioned in finding of fact 8. In addition, the following warranty section is applicable:

**30-11-217. Warranty when thing cannot be examined by buyer.** One who sells or agrees to sell merchandise inaccessible to the examination of the buyer thereby warrants that it is sound and merchantable.

As a result McCalif warranted to Reed that the plants were sound and merchantable.

The extent of Reed's damages is specified in the following section:

7

30-2-713. **Buyer's damages for nondelivery or repudiation.** (1) . . . the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this chapter (30-2-715), but less expenses saved in consequence of the seller's breach. (Emphasis supplied.)

The pertinent part of the above-referenced section on consequential damages is the following:

30-2-715. **Buyers incidental and consequential damages.** . . .
(2) Consequential damages resulting from the seller's breach include:
(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
(b) injury to person or property proximately resulting from any breach of warranty.

The record shows without contradiction that there was no other source for replacement of the damaged poinsettias (cover as referred to in the UCC). The record also shows that these elements were discussed between McCalif and Reed.

We therefore conclude that based upon the record before us, and the findings of fact of the District Court, Reed is entitled to damages for nondelivery or repudiation by Reed which includes the difference in the market price mentioned in the statute as well as the incidental and consequential damages. The record does demonstrate that Reed proved that he would have been paid $3.95 per plant and that as a result he claimed damages in the sum of $8,693.95. Reed argues that judgment should be entered in his behalf in that amount. We point out that the record does not demonstrate whether or not there were any "expenses saved in

8

consequence of the seller's breach" on the part of Reed. We may assume there would have been some cost in raising the plants from August to December and that additional evidence may be required in order to determine any such offset.

We reverse the judgment for McCalif and remand for a determination by the District Court of the amount owing to Reed under its counter claim, including such consequential and incidental damages as the court determines to be appropriate, and the entry of the appropriate judgment balancing the awards to McCalif and Reed.

## II.

Did the District Court err in awarding plaintiffs attorney fees because defendant should have been awarded judgment and neither statutes nor contract call for such an award?

Our review of the record indicates there is not a written contract which provides for the award of attorney fees. In addition no statute has been called to our attention which provides for attorney fees.

We therefore reverse the award by the District Court of attorney fees to McCalif.

Reversed and remanded for the determination of damages to the parties as previously specified.

_____
Justice

We Concur:

_____
Chief Justice

9

William E Hunter

Troy Trieweiler

Justices