**In re Debra K. McLOUTH, Debtor.**

**No. 00–51569–13.**

United States Bankruptcy Court, D. Montana.

Sept. 14, 2000.

---

Gregory E. Paskell, Kalispell, MT, for debtor.

Counsel of Record: Charles J. Peterson, Dickinson, ND, Local Counsel: Richard J. Samson, Christian, Samson & Jones, P.C., Missoula, MT, for Advanta Mortgage Corporation.

## ORDER

RALPH B. KIRSCHER, Bankruptcy Judge.

After due notice a hearing was held at Missoula on August 8, 2000, on the Debtor's "Motion for Turnover and Sanctions for Violation of Automatic Stay" filed against Advanta Mortgage Corporation ("Advanta") on July 24, 2000, based upon a trustee's sale of the Debtor's home [1] which took place on the petition date but several hours prior to the time Debtor filed her Chapter 13 bankruptcy petition. Advanta's attorney Charles J. Peterson ("Peterson") filed a response in opposition on July 27, 2000, and Missoula attorney Richard D. Samson ("Samson") represented Advanta at the hearing. Attorney Gregory E. Paskell ("Paskell") appeared on behalf of the Debtor. No testimony or exhibits were admitted. The Court heard argument of counsel. At the close of the hearing the Court granted the parties time to file simultaneous briefs and took the matter under advisement. The briefs have been submitted and reviewed by the Court, together with the applicable law. This matter is ready for decision.

At issue is whether Advanta wilfully violated the "automatic stay" of 11 U.S.C. § 362(a) when a trustee's sale of Advanta's security to a third party took place on the petition date but several hours prior to the time Debtor filed her bankruptcy petition. For the reasons set forth below, under the plain language of § 362(a) the stay was not effective until the filing of the Debtor's Chapter 7 petition, and therefore the trustee's sale did not violate the stay and Debtor's motion for turnover and for sanctions is denied.

## FACTS

The material facts are not in dispute. Advanta was the beneficiary under a valid trust indenture securing a note, both of which the Debtor executed, by which Debtor granted her home as Advanta's security. Peterson was the trustee under the trust indenture. After the Debtor defaulted under the terms of the note and trust indenture, Peterson properly noticed and conducted a trustee's sale of Advanta's security on or about 11:00 o'clock a.m. on June 21, 2000, on the steps of the Flathead County Courthouse. Robert J. Rinke ("Rinke") bid $87,000 for the property, and Peterson accepted his bid. Rinke tendered $87,000 in certified funds to Peterson for the purchase, and Peterson executed a trustee's deed conveying the property to Rinke.

The Debtor filed her Chapter 13 petition at 4:59 p.m. on June 21, 2000, after the trustee's sale and delivery of the trustee's deed to Rinke. The trustee's deed was recorded several days later. Notwithstanding the sale, delivery of the trustee's deed and its recordation, the Debtor remains in possession of the property. Debtor filed her motion for turnover and for sanctions on July 24, 2000.

## CONTENTIONS OF THE PARTIES

At hearing Paskell argued that the Debtor's bankruptcy petition stayed the trustee's sale because it was filed on the date of the sale, even though the sale took place several hours before she filed her petition. Debtor contends that the sale

---

1. Debtor's Schedules A and C describe the real property comprising Advanta's security as follows, to-wit: "A tract of land in the NE1/4SW1/4 of Section 8, Township 27 North, Range 22 West, P.M.M., Flathead County, Montana."

was not complete under Montana law until the trustee's deed was recorded several days later, and that because the recordation occurred after the petition date the sale was void and a violation of the stay.

Advanta contends that the trustee's sale was completed before the automatic stay arose; that the "indivisible day" rule espoused by the Debtor should not be adopted for purposes of § 362(a) because the Debtor failed to address her default during the notice period preceding the trustee's sale; that the Debtor's estate has no interest in the property conveyed by the trustee's deed under Montana law and thereby under 11 U.S.C. § 541(a); and that the Debtor's motion is improper procedure because she did not initiate an adversary proceeding to recover property under F.R.B.P. 7001(1).

## DISCUSSION

Section § 362(a) provides in pertinent part: "[A] petition filed ... operates as a stay, applicable to all entities, of—

> \*     \*     \*     \*     \*     \*
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title...."

11 U.S.C. § 362(a).

■ The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992). Section 362(a) is "self-executing, *effective upon the filing of the bankruptcy petition.*" *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir.2000)

(emphasis added); *In re Reece*, 15 Mont. B.R. 474, 477–78 (Bankr.Mont.1996).

■ The Ninth Circuit recently construed § 362(a) in *In re Pettit*, 217 F.3d 1072, 1077, 36 B.C.D. 91, 93 (9th Cir.2000):

> The automatic stay under section 362 is designed to give the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations. See *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir.1985). The stay is self-executing, *effective upon the filing of the bankruptcy petition*, see *Minoco Group of Cos. v. First State Underwriters Agency of New Eng. Reins. Corp. (In re Minoco Group of Cos.)*, 799 F.2d 517, 520 (9th Cir.1986), and sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

(Emphasis added). Based upon the above case authority the Court declines to adopt the "indivisible day" rule urged by the Debtor, i.e., that the petition stayed the trustee's sale even though the sale took place several hours before the Debtor filed her petition.

■ The plain language of § 362(a) states "a petition filed ... operates as a stay". In construing § 362(a), the first step in ascertaining congressional intent is to look to the plain language of the statute, and the plain meaning controls. *DeGeorge v. United States District Court for the Central District of California*, 219 F.3d 930, 936–37 (9th Cir.2000). When the words of a statute are unambiguous, "judicial inquiry is complete." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d

391 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241–242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989); *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).

■ Section 362(a) states that a petition filed operates as a stay. It does not state that a stay arises on the date of the filing of the petition, as urged by the Debtor. Courts should disfavor interpretations of statutes that render language superfluous. *Connecticut National Bank v. Germain*, 503 U.S. at 253–54, 112 S.Ct. at 1149. If Congress intended for the automatic stay to arise on the "date of the filing of the petition", it would have drafted § 362(a) to make the stay effective on the date of the filing of the petition, as it drafted the statute for determining exemptions, 11 U.S.C. § 522(b)(2)(A), and other subsections of the Code [2].

**2.** The phrase "the date of the filing of the petition" is found in several sections of Title 11, U.S.C., including but not limited to: Section 502(b) (allowance of claims); § 541(a)(5) (property of the estate); §§ 547(b)(4) & (e)(2)(C) (preferences); § 548(a) (fraudulent transfers); § 727(a) (objection to discharge).

**3.** *Dilree* is somewhat suspect authority, because it relied in part on *In re Peterson*, 106 B.R. 229, 231, 8 Mont. B.R. 7, 11 (1989) on the issue of whether debtors had valid homestead exemptions when they had not filed declarations of homestead as of the petition date. *Dilree*, 12 Mont. B.R. at 398–99 (*quoting Peterson*). Subsequently, this Court overruled *Peterson* based upon Ninth Circuit precedent that a debtor in bankruptcy may file a homestead declaration up until the date of an execution sale. *In re Doss*, 10 Mont. B.R. 163–64, 1991 WL 700518 *3 (Bankr.Mont. 1991); *See In re Gitts*, 116 B.R. 174, 179–80 (9th Cir. BAP 1990), *aff'd* 927 F.2d 1109 (9th Cir.1991).

**4.** Pursuant to 11 U.S.C. § 522(b)(2)(A) Montana has opted out of the federal exemption scheme by means of Mont.Code Ann. § 31–2–106. *In re Schmitz*, 16 Mont. B.R. 512, 515

Debtor cites *In re Dilree*, 12 Mont. B.R. 398 (Bankr.Mont.1993) [3], in support of her indivisible day theory, stating that in *Dilree* "the court held that the date is to [sic] date." Debtor's Brief p. 2. Paskell argues that *Dilree* held that the filing of a homestead on the petition date, but after the filing of the petition, did not invalidate the homestead. While that may be the result in *Dilree*, the instant case is distinguishable from *Dilree* both on the facts and the law. *Dilree* involved the allowance of a homestead exemption, which is determined along with other exemptions according to Montana law [4] "that is applicable on the date of the filing of the petition". 11 U.S.C. § 522(b)(2)(A). The language of § 522(b)(2)(A) referring to "the date of the filing of the petition" is simply not found in § 362(a), and thus the holding in *Dilree* is of no support for Debtor's indivisible day theory.

■ The instant case involves a Chapter 7 petition filed several hours after the trustee Peterson conducted a trustee's sale and delivered a trustee's deed pursuant to Montana law [5]. The Debtor's bankruptcy

(Bankr.Montana 1998); *In re Mackenzie*, 16 Mont. B.R. 338, 340 (Bankr.Mont.1998).

**5.** Mont.Code Ann. §§ 71–1–315(1) and (2) state the procedure for noticing a foreclosure of trust deed by advertisement and sale. There is no contention by the Debtor that the sale was not properly noticed. Section 71–1–315 sets forth the procedure for the sale:

(3) On the date and at the time and place designated in the notice of sale, the trustee or his attorney shall sell the property at public auction to the highest bidder. The property may be sold in one parcel or in separate parcels, and any person, including the beneficiary under the trust indenture but excluding the trustee, may bid at the sale. The person making the sale may, for any cause he deems expedient, postpone the sale for a period not exceeding 15 days by public proclamation at the time and place fixed in the notice of sale. No other notice of the postponed sale need be given. In the event a sale cannot be held at the scheduled time by reason of the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. 362, or of a stay order issued by any court of competent jurisdiction, the

case commenced with the filing of her petition. 11 U.S.C. § 301. There is no question that the automatic stay was not in effect when the trustee Peterson conducted the trustee's sale of Advanta's security at 11:00 a.m. on June 21, 2000. Several hours later at 4:59 p.m. on June 21, 2000, the Debtor filed her Chapter 13 bankruptcy petition. Since Congress drafted § 362(a) in plain language stating that the filing of a petition operates as a stay, this Court holds that the automatic stay is effective upon the filing of the bankruptcy petition. *In re Pettit*, 217 F.3d at 1077, 36 B.C.D. at 93; *In re Gruntz*, 202 F.3d at 1081. Therefore, the trustee's sale which Peterson conducted on June 21, 2000, did not violate the automatic stay.

Next, Paskell argues that the trustee's sale was not complete until after the trustee's deed was recorded, and since it was not recorded until several days after the petition date the sale was stayed and the stay violated by the recordation. If, however, after the trustee's sale and delivery of the trustee's deed the property was not property of the estate, the trustee's sale and subsequent recordation of the trustee's deed were never subject to and did not violate the automatic stay. *Pettit*, 217 F.3d at 1077–78. As *Pettit* explains:

> The automatic stay applies only to property of the bankruptcy estate, see id. § 362, which is defined broadly as "all legal or equitable interests of the debtor in property as of the commencement of the case." Id. § 541. Here, because the Pettits had no legal or equitable interest in the registry funds when they filed for bankruptcy, we hold that the

funds never became property of the bankruptcy estate and, thus, the Trust Funds never violated the automatic stay.

217 F.3d at 1077.

The issue becomes whether the property sold at the trustee's sale is property of the bankruptcy estate. While 11 U.S.C. § 541(a)(1) includes in the estate all legal or equitable interests of the debtor in property as of the commencement of the case, state law determines the extent of such interests and when they expire. *In re Deines*, 17 Mont. B.R. 114, 117–120 (Bankr.Mont.1998) (*quoting In re Campbell (Balyeat Law Offices v. Campbell)*, 14 Mont. B.R. 132, 140–41 (9th Cir. BAP 1995)); *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir.1988); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir.1986). "The bankruptcy estate succeeds to no more interest than the Debtor possessed or had, and the estate takes its interest subject to such conditions." *In re Deines*, 17 Mont. B.R. at 117 (*quoting In re Baquet*, 61 B.R. 495, 497–98 (Bankr.Mont.1986)); *see also In re Weatherwax*, 16 Mont. B.R. 304, 308–09 (Bankr. Mont.1997).

The estate's interest in the sold property, then, is determined as of the filing of the petition on June 21, 2000, and the Court must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. *Pettit*, 217 F.3d at 1078; *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). This case commenced with the filing of Debtor's petition. 11

---

person making the sale may, as often as he considers expedient, postpone the sale. Each postponement may not exceed 30 days, and all postponements, in the aggregate, may not exceed 120 days. Each postponement must be effected by a public proclamation at the time and place fixed in the notice of sale or fixed by previous postponement. No other notice of the postponed sale need be given.

(4) The purchaser at the sale shall pay the price bid in cash, and upon receipt of pay-

ment, the trustee shall execute and deliver a trustee's deed to the purchaser. In the event the purchaser refuses to pay the purchase price, the person conducting the sale shall have the right to resell the property at any time to the highest bidder. The party refusing to pay shall be liable for any loss occasioned thereby, and the person making the sale may also, in his discretion, thereafter reject any other bid of such person.

U.S.C. § 301. By that time the property had been sold, Rinke paid the bid price, and Peterson executed a trustee's deed and delivered it to Rinke pursuant to Mont.Code Ann. § 71–1–315(4) ("The purchaser at the sale shall pay the price bid in cash, and upon receipt of payment, the trustee shall execute and deliver a trustee's deed to the purchaser.").

The effect of the Trustee's deed under Montana law is explained at Mont.Code Ann. § 71–1–318(3): "The trustee's deed shall operate to convey to the purchaser, without right of redemption, the trustee's title and all right, title, interest, and claim of the grantor and his successors in interest and of all persons claiming by, through, or under them in and to the property sold, including all such right, title, interest, and claim in and to such property acquired by the grantor or his successors in interest subsequent to the execution of the trust indenture." In other words when Peterson delivered the trustee's deed to Rinke upon receipt of the bid price, it conveyed all the Debtor's right to the property sold by advertisement and sale, and the Debtor retained no legal or equitable ownership interests which could become property of the estate when it was created at the commencement of the case under § 541(a).

Further, Rinke was entitled to possession of the property on the tenth day following the sale[6]. This result reflects the *quid pro quo* adopted by the Montana legislature in adopting the Small Tract Financing Act of Montana, whereby the lending industry would give up their right to deficiency on default if borrowers would give up their rights of possession and redemption. *Carpenters–Employers Retirement Trust Fund v. Galleria Partnership*, 239 Mont. 250, 256–57, 780 P.2d 608, 612 (1989); *First Federal Sav. and Loan v. Anderson*, 238 Mont. 296, 300, 777 P.2d 1281, 1283 (1989); *First State Bank of*

*Forsyth v. Chunkapura*, 226 Mont. 54, 57–58, 734 P.2d 1203, 1205 (1987). Peterson conducted the trustee's sale under the power of sale provisions of the Small Tract Financing Act. Advanta had no right to a deficiency judgment against the Debtor as a result of the sale, but according to the *quid pro quo* the Debtor and the estate thereafter had no ownership interests or rights of redemption or possession under Montana law pursuant to §§ 71–1–318(3) and 71–1–319.

■ Debtor argues that the trustee's sale was not complete and the Debtor's interest was not transferred until the trustee's deed was recorded, and since it was recorded after the petition date such recordation violated the stay and the transfer was stayed. As a preliminary matter, as between the Debtor, Advanta and the trustee the recording of the trustee's deed made no legal difference under Montana law. Mont.Code Ann. § 70–21–102 provides: "Unrecorded instruments valid between parties. An unrecorded instrument is valid as between the parties and those who have notice thereof." There is no question the Debtor had notice of the trustee's sale and was a party to the trust indenture, so even if the trustee's deed had not been recorded it remains valid between the parties and the Debtor under § 70–21–102. *See, Anderson v. Johnson*, 264 Mont. 66, 73–74, 870 P.2d 59, 63–64, 51 St. Rep. 149 (1994). Since the bankruptcy estate succeeded to no more interest than the Debtor possessed at the commencement of the case, the trustee's deed is valid and binding on the estate even if not recorded. *In re Deines*, 17 Mont. B.R. at 117; *In re Baquet*, 61 B.R. at 497–98. The recording made no difference.

Debtor cites this Court's decision in *In re Marchion*, 17 Mont. B.R. 450, 457 (Bankr.Mont.1999) as authority for her ar-

---

**6.** Mont.Code Ann. § 71–1–319 provides: "The purchaser at the trustee's sale shall be entitled to possession of the property on the 10th day following the sale, and any persons remaining in possession after that date under any interest, except one prior to the trust indenture, shall be deemed to be tenants at will."

gument that the trustee's sale was not complete and the Debtor's interest cannot be transferred prior to recordation. However, Paskell misinterprets *Marchion.* In *Marchion* a trustee's sale took place and a trustee's deed was recorded, and the debtor alleged that the trustee's sale was not conducted in accordance with the requirements of the Small Tract Financing Act. *Marchion,* 17 Mont. B.R. at 456. This Court wrote:

> The effect of the recording of the trustee's deed is provided in [Mont.Code Ann. §§] 71–1–318(2) & (3):
>
> (2) When the trustee's deed is recorded in the deed records of the county or counties where the property described in the deed is situated, the recitals contained in the deed and in the affidavits required under 71–1–315(2) shall be prima facie evidence in any court of the truth of the matters set forth therein, except that the same shall be conclusive evidence in favor of subsequent bona fide purchasers and encumbrancers for value and without notice.
>
> (3) The trustee's deed shall operate to convey to the purchaser, without right of redemption, the trustee's title and all right, title, interest, and claim of the grantor and his successors in interest and of all persons claiming by, through, or under them in and to the property sold, including all such right, title, interest, and claim in and to such property acquired by the grantor or his successors in interest subsequent to the execution of the trust indenture.

The trustee's deed having been recorded, the Court finds that Bland has made a prima facie showing that there is no genuine issue of material fact that the notice provisions of the STFA were complied with and that it is entitled to summary judgment as a matter of law that it has, by trustee's title, all right, title,

interest and claim of the Plaintiff in the property sold.

*Marchion,* 17 Mont. B.R. at 457.

This Court did not hold in *Marchion,* as Paskell contends, that § 71–1–318(3) requires recordation of the trustee's deed to transfer a debtor's interest and complete a sale. The Court simply gave prima facie effect, based upon recording of the trustee's deed as provided under § 71–1–318(2), that the recitals in the deed were true and that the requirements of the STFA were followed. *Id.* Then the Court applied § 71–1–318(3) to the facts and granted summary judgment that the purchaser took the all of the debtor's right, title, and interest in the property sold. *Id.*

Debtor's interpretation of *Marchion* would insert a requirement of recordation into § 71–1–318(3) which it presently does not contain. In interpreting Montana's statutes, the Court does so under the "plain meaning" rule as explained by the Montana Supreme Court in *Western Energy Company v. State, Dept. of Rev.,* 297 Mont. 55, 990 P.2d 767, 769 (1999):

> When we interpret a statute, our objective is to implement the objectives the legislature sought to achieve. *Montana Wildlife Fed'n v. Sager* (1980), 190 Mont. 247, 264, 620 P.2d 1189, 1199. The legislative intent is to be ascertained, in the first instance, from the plain meaning of the words used. *Boegli v. Glacier Mountain Cheese Co.* (1989), 238 Mont. 426, 429, 777 P.2d 1303, 1305. If the intent of the legislature can be determined from the plain meaning of the words used in the statute, the plain meaning controls and the Court need go no further nor apply any other means of interpretation. *Phelps v. Hillhaven Corp.* (1988), 231 Mont. 245, 251, 752 P.2d 737, 741.

The plain meaning of the words in § 71–1–318(3) does not require recordation of the trustee's deed in order for the trustee's deed to operate as provided therein. Debtor's interpretation of *Marchion* would require the Court to add a recordation

requirement to the plain language of § 71–1–318(3). If the Montana legislature intended for § 71–1–318(3) to require recordation for a trustee's deed to operate as provided therein, it would have drafted it to include language that the deed must be recorded to convey to the purchaser the grantor's rights, just as the legislature drafted the preceding subsection, § 71–1–318(2). Since the Montana legislature did not include a recordation requirement in § 71–1–318(3), this Court declines to do so. Section 71–1–318(3) operates to transfer the grantor's interest to the purchaser regardless of recordation, subject to the provisions of Title 70, chapter 21, Mont.Code Ann. which are not at issue in the instant case [7].

## CONCLUSION

The automatic stay did not become effective until the Debtor filed her Chapter 13 bankruptcy petition. § 362(a). By then the trustee had completed the trustee's sale and delivered a trustee's deed to Rinke. Under Montana law, § 71–1–318(3), the trustee's deed conveyed to Rinke all the Debtor's rights and interests in the property sold at the trustee's sale. Just as in *Pettit* where the debtors retained no legal or equitable ownership interests in property once judgment was entered, in the instant case the Debtor retained no legal or equitable ownership interests in the property sold at the trustee's sale as of the filing of her petition. *Pettit*, 217 F.3d at 1078, 36 B.C.D. at 93, 94. Thus, the property sold at the trustee's sale did not become property of the estate pursuant to § 541(a) upon the filing of Debtor's petition, and the sale and subsequent recordation of the trustee's deed were never subject to the automatic stay. *Pettit*, 217 F.3d at 1078, 36 B.C.D. at 93, 94. The Debtor has no right to turnover of the property, and has not shown a violation of the automatic stay by Advanta.

IT IS ORDERED the Debtors' Motion for Turnover and Sanctions for Violation of Automatic Stay, filed July 24, 2000, is denied.

---

7. *Compare In re Bebensee–Wong*, 248 B.R. 820, 822–23 (9th Cir. BAP 2000) (California relation-back statute perfected the trustee's sale on the actual date of prepetition sale even though the purchaser recorded the trustee's deed after the automatic stay took effect).