**In re Vera H. MOORE, Debtor.**

**No. 00–34272 KJC.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 14, 2001.

David A. Scholl, Media, PA, for debtor.

Heidi R. Spivak, Mark J. Udren & Associates, Cherry Hill, NJ, for Ocwen Federal Bank, FSB.

Frederic J. Baker, Sr., Philadelphia, PA, Assistant United States Trustee.

## MEMORANDUM OPINION

KEVIN J. CAREY, Bankruptcy Judge.

### *BACKGROUND* [1]

Before this Court is the motion of Ocwen Federal Bank, FSB ("Ocwen") for relief from the automatic stay imposed by 11 U.S.C. § 362 (the "Stay Motion"). A hearing on the Stay Motion was held on April 17, 2001, at which time the parties introduced evidence and argued their respective positions. The parties subsequently briefed the issues, with Ocwen filing its brief on May 1, 2001, and the debtor filing her memorandum of law on May 2, 2001 and a reply memorandum on May 8, 2001.

The undisputed facts of this matter are as follows: Ocwen is the holder of a note and first mortgage on real property owned by the debtor, Vera H. Moore, located at 206 E. Claremont Road, Philadelphia, PA (the "Property"). After the debtor defaulted in her payments on the note and mortgage, Ocwen commenced a mortgage foreclosure action on January 7, 1999, obtaining a judgment against her on February 24, 1999. The Property was scheduled to be sold at sheriff's sale on November 14, 2000 at 10:00 a.m., on which date Ms. Moore filed a *pro se* chapter 13 bankruptcy petition. The petition was time-stamped by the Bankruptcy Court clerk's office as being filed at 4:37 p.m.

The parties disagree about the effect of what occurred on November 14, 2000. Each party presented testimony at the hearing on the Stay Motion to supply facts in support of their respective positions. Ocwen's attorney in the foreclosure action testified that he attended the November 14, 2000 sheriff's sale and, because there was no bidding on the Property, Ocwen was the purchaser of the Property at the sale.[2] Captain Jedelle Baxter, Jr. of the Philadelphia Sheriff's Office also testified that the records of the sheriff's office indicated that the property was sold at the

1. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr.P. 7052.

2. Transcript of April 17, 2001 hearing, pp. 5–6 (hereinafter, Tr. at p. ——).

November 14, 2000 sale to Ocwen.[3] Captain Baxter then testified that, after the sheriff's office received notice of Ms. Moore's bankruptcy petition filing, which occurred later that day, the sheriff's office subsequently designated the sale as postponed and rescheduled it for February 2001.[4] Captain Baxter testified that if a bankruptcy petition is filed that affects a property scheduled for sheriff's sale, the sheriff's office's practice is to postpone the scheduled sale for 90 days to allow the plaintiff's attorney time to obtain relief from the automatic stay.[5] Captain Baxter testified that this practice is followed even when the sale is concluded prior to filing of the bankruptcy petition.[6] The debtor also introduced into evidence as Exhibit D–1 a copy of the state court docket for the foreclosure proceeding, reflecting no docket entries or notes evidencing the occurrence of a sheriff's sale on November 14, 2000.[7]

Ocwen's attorney estimated that the sale of the Property occurred between 10 a.m. and 12 noon on November 14, 2000.[8] Captain Baxter testified that the sales on November 14, 2000 ended sometime around 2:00 or 2:30 p.m.[9] Although the debtor testified that she could not recall what time her bankruptcy petition was filed on November 14, 2000,[10] the petition was time-stamped at 4:37 p.m. and the debtor is not disputing that the bankruptcy filing occurred after the sheriff's sale was concluded.[11]

For the reasons set forth below, I find that, pursuant to Pennsylvania law, a valid sheriff's sale occurred on November 14, 2000 and that cause exists to grant Ocwen relief from the automatic stay.[12]

3. Tr. at p. 21. When testifying, Captain Baxter referred to handwritten notes on the Auctioneer List for the sale on November 14, 2000 that was admitted into evidence as Exhibit D–2. The handwritten notes included a capital letter "A" next to the Property listing, which had been crossed out and then the notation "BK–P–Feb" was written next to the crossed-out "A." Captain Baxter testified that the handwritten "A" was written on the list by the auctioneer's assistant at the time of the sale and indicated that the Property had been sold to the attorney on the writ, i.e., Ocwen, as foreclosing creditor. (Tr. at pp. 23–24.) Captain Baxter also testified that the notation of "BK–P–Feb" was probably written after the sale upon returning to the sheriff's office. (Tr. p. 24.) This notation indicated that the sheriff's office had received a bankruptcy petition and the sale would be postponed to February 2001 to give the attorney for the plaintiff an opportunity to get relief from the stay. (Tr. p. 21.)

4. Tr. at p. 21.

5. *Id.*

6. Tr. at p. 25. While I find that Captain Baxter testified truthfully and credibly, his testimony did not offer a very full description of this practice.

7. Ocwen objected to admission of the docket introduced into evidence at the hearing because it had not been authenticated. (Tr. at p. 28). However, the parties agreed to admission of a certified copy of the docket that would be submitted after the hearing. (*Id.*) The debtor attached a certified copy of the docket to her May 2, 2001 brief.

8. Tr. at p. 6.

9. Tr. at p. 25.

10. Tr. at p. 13 and p. 15.

11. Tr. at p. 39.

12. Whether to terminate, modify, condition, or annul the bankruptcy stay under § 362(d) is within the discretion of the bankruptcy court. *See Matter of Holtkamp,* 669 F.2d 505 (7th Cir.1982); *In re Shariyf,* 68 B.R. 604 (E.D.Pa.1986); *In re Colonial Center, Inc.,* 156 B.R. 452, 459 (Bankr.E.D.Pa.1993). This determination is to be made by examining the totality of the circumstances. *Matter of Baptist Medical Center of New York, Inc.,* 52 B.R. 417, 425 (E.D.N.Y.1985), aff'd, 781 F.2d 973 (2d Cir.1986). The party seeking relief from the stay has an initial burden to demonstrate cause for relief. *In re Ward,* 837 F.2d 124,

Accordingly, the Stay Motion will be granted.

### *DISCUSSION*

A. *Did a sheriff's sale of the Property occur on November 14, 2000?*

Under Pennsylvania law, the "sale" of a property in the context of a sheriff's sale takes place when the hammer falls. *Pennsylvania Co. for Insurances on Lives and Granting Annuities, to Use of Jefferson Medical College of Philadelphia v. Broad Street Hospital,* 354 Pa. 123, 128, 47 A.2d 281, 283 (1946).[13] The testimony of both Ocwen's attorney and Captain Baxter support the finding that the property was sold to the attorney on the writ, i.e. to Ocwen as the foreclosing creditor, at the November 14, 2000 sheriff's sale. The question posed is whether the subsequent action of the sheriff's office (i.e., treating the sale as postponed) had the effect of undoing the sale.

Despite the testimony, the debtor argues that the docket for the state court foreclosure action provides evidence that no valid sheriff's sale occurred on November 14, 2000 because there is no entry on the docket for that date. (Presumably, when a sheriff's sale occurs, such an event is noted on the docket.) In reviewing the docket, I consider two things: (1) should the lack of docket entry be given greater weight than the testimony of the witnesses at the hearing on the Stay Motion; and (2) whether the lack of a docket entry provides a basis for finding that the state court, at least tacitly, agreed that the sheriff's office nullified the sale.

First, as the debtor readily agreed (Tr. at p. 32 and Debtor's Memorandum of Law, May 2, 2001, at p. 3), and as my own experience as a practicing attorney and particularly now as a judge informs me, dockets sometimes contain inaccuracies or mistakes. Therefore, I am not willing to give greater weight to the docket entries (or lack thereof) when they are contrary to the undisputed testimony (and the records of the office which conducted the sale) presented at the hearing on the Stay Motion. The evidence presented by both parties demonstrated that a sale of the Property did, in fact, occur between 10:00 a.m. and 2:30 p.m. on November 14, 2000. The lack of a docket entry reflecting the sale does not create any doubt as to the occurrence of the sheriff's sale.

Second, the debtor argues that the docket does not contain a mistake, but is consistent with the testimony of Captain Baxter that any sale was administratively nullified by the sheriff's office upon receipt of the later-filed bankruptcy petition. The debtor further argues that bankruptcy courts cannot reconsider and vacate a state court judgment. (Debtor's Memorandum of Law, May 2, 2001, p. 3). While I agree that a bankruptcy court may not reconsider or vacate a state court judgment under these circumstances (*In re James,* 940 F.2d 46 (3d Cir.1991)), there is no evidence that the action by the sheriff's

128 (3d Cir.1988); *In re American Sweeteners, Inc.* No. 99-19471DWS, 1999 WL 1068446, at *2, 1999 Bankr.LEXIS 1457, at *8 (Bankr. E.D.Pa.Nov. 22, 1999).

13. *See also Butler v. Lomas and Nettleton Co.,* 862 F.2d 1015, 1019 (3d Cir.1988) (In a case under 11 U.S.C. § 548, the court decided that the "transfer" of interest occurred on the date of the sheriff's sale, not the date on which the sheriff performed the ministerial act of acknowledging and transferring the deed, because the purchaser at a sheriff's sale obtains vested equitable ownership of the property at the fall of the auctioneer's hammer.) *Cf. New York Guardian Mortgage Co. v. Brokenborough,* 394 Pa.Super. 105, 575 A.2d 121 (1990) (Court permitted a mortgagee to stay a sheriff's sale after bidding began but *before* the hammer falls ending the sheriff's sale.)

office possesses any characteristics of a judicial determination or was anything more than an act based upon the sheriff's office's prior administrative practices. Further, in the *Pennsylvania Co. for Insurances* decision, the Pennsylvania Supreme Court relied upon early caselaw in which the court decided that lower courts should not subsequently alter the rights of a purchaser at a sheriff's sale absent a finding of fraud or abuse of power in the sheriff. *Pennsylvania Co. for Insurances,* 354 Pa. at 129–130, 47 A.2d at 284.[14]

Finding no basis to set aside the sheriff's sale under state law, I turn to federal bankruptcy law. Captain Baxter testified that it was the filing of the debtor's bankruptcy petition that caused the sheriff's office to "postpone" the sale. Therefore, I will analyze whether the automatic stay of Section 362(a)[15] provides a basis for staying a sheriff's sale that occurred on the same date of the bankruptcy filing, even though the bankruptcy petition was filed after the sale was completed.

A similar issue was considered by the court in the case *In re McLouth,* 257 B.R. 316 (Bankr.D.Mont.2000), in which a debtor argued that her bankruptcy petition stayed a trustee sale, even though the sale was held several hours before she filed her chapter 13 petition. *McLouth,* 257 B.R. at 318. The debtor in *McLouth* had filed a motion against the mortgagee for turnover and for sanctions due to an alleged violation of the automatic stay. After looking to the plain language of Sec-

14. In deciding that a "sale" of a property during a sheriff's sale occurs when the hammer fell, the *Pennsylvania Co. for Insurances* court reviewed early caselaw on this issue, including the case *Young's Appeal,* 2 Pen. & W. 380 (1831). *Young's Appeal* involved the situation in which the debtor appeared after a property was sold at sheriff's sale, but before the sheriff delivered the deed to the purchaser, and offered payment of the lien in order to keep his land. The lower court allowed the debtor to do so, setting aside the sheriff's sale; but the Pennsylvania Supreme Court reversed, finding: "In is not a sound exercise of the discretionary power of the court to destroy the vested rights of a fair purchaser, either from feelings of sympathy for the defendant in the execution, or because the court may not see any peculiar hardship in the bona fide purchaser being arbitrarily deprived of his just and equitable right." *Pennsylvania Co. for Insurances,* 354 Pa. at 129–130, 47 A.2d at 284.

15. Section 362 of the Bankruptcy Code, 11 U.S.C. § 362(a), provides that:

> [A] petition filed under section 301 [voluntary cases], 302 [joint cases] or 303 [involuntary cases] of this title, ...operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
>
> (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

tion 362(a), the *McLouth* court declined "to adopt the 'indivisible day' rule urged by the Debtor, i.e., that the petition stayed the trustee's sale even though the sale took place several hours before the Debtor filed her petition." *McLouth,* 257 B.R. at 319. The *McLouth* court wrote:

> Section 362(a) states that a petition filed operates as a stay. It does not state that a stay arises on the date of the filing of the petition, as urged by the Debtor. Courts should disfavor interpretations of statutes that render language superfluous. *Connecticut National Bank v. Germain,* 503 U.S. at 253–54, 112 S.Ct. at 1149[, 117 L.Ed.2d 391 (1992)]. If Congress intended for the automatic stay to arise on the "date of the filing of the petition", it would have drafted § 362(a) to make the stay effective on the date of the filing of the petition, as it drafted the statute for determining exemptions, 11 U .S.C. § 522(b)(2)(A), and other subsections of the Code.

*McLouth,* 257 B.R. at 320.[16] Based upon the plain language of Section 362(a), the automatic stay took effect as of 4:37 p.m. on November 14, 2000, i.e., the time the petition was filed.

B. *Does "cause" exist to grant Ocwen relief from the automatic stay?*

Ocwen agrees that the automatic stay applied to the Property as of the filing of the petition and that the stay prevents Ocwen from completing the sheriff sale process, (i.e., settling with the sheriff, obtaining a sheriff's deed, and obtaining possession of the property). *See Brown,* 75 B.R. at 1012. Ocwen is seeking relief from the stay for "cause" pursuant to Section 362(d)(1).[17] Whether Ocwen is entitled to relief from the stay for "cause" depends upon the extent of the parties' respective interests in the Property as of the filing of the petition.

Bankruptcy Code Section 541, 11 U.S.C. § 541, describes the debtor's "estate" that is created upon the filing of a petition to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The inclusion of the debtor's legal interest in property of the estate was described as follows:

**16.** Other bankruptcy courts in Pennsylvania have considered cases in which the debtor filed a bankruptcy petition hours after the completion of a sheriff's sale without discussing the possibility that a bankruptcy petition filed on the same date, but after the conclusion of a sale, could stay (and, in effect, void) the earlier sheriff's sale. *In re Donovan,* 183 B.R. 700 (Bankr.W.D.Pa.1995)(Bentz, C.B.J.); *In re Brown,* 75 B.R. 1009 (Bankr.E.D.Pa. 1987)(Fox, B.J.). In *Donovan,* the sheriff's office designated the sheriff's sale of the property in issue as "Stayed in the meantime—Bankruptcy" and did not prepare a schedule of distribution or sheriff's deed to the property. *Donovan,* 183 B.R. at 701. The *Donovan* court reviewed the parties' respective interests in the property in issue *as of the time of the bankruptcy petition filing* to determine whether the property was "property of the estate" under 11 U.S.C. § 541. *Donovan,* 183 B.R. at 701–02. In *Brown,* the court decided that Section 1322(b)(5) did not authorize the debtor to cure a mortgage delinquency and reinstate the mortgage when the bankruptcy petition was filed *after* the conclusion of the sheriff's sale but before delivery of the sheriff's deed. *Brown,* 75 B.R. at 1009. The *Brown* court considered the parties' rights under Section 1322(b)(5) *as of the time of the bankruptcy petition filing.*

**17.** Section 362(d)(1) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of interest in property of such party in interest.

Section 541(d) "reiterates the general principal that where the debtor holds bare legal title without any equitable interest, that the estate acquires bare legal title without any equitable interest in the property." 124 Cong.Rec. 33999 (1978 *reprinted* 1978 U.S.Code Cong. & Admin.News 6505, 6524.) In determining when a debtor has a "legal" or "equitable" interest in property, the court must turn to state law as the determination of property rights in the assets of a bankruptcy estate is governed by state law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979).

*In re Spencer,* 115 B.R. 471, 476 (D.Del. 1990).

Ocwen was the purchaser of the Property at the sheriff's sale on the morning of November 14, 2000. The purchaser at a sheriff's sale obtains vested equitable ownership of the property at the fall of the auctioneer's hammer. *Donovan,* 183 B.R. at 701 (citing *Butler v. Lomas and Nettleton Co.,* 862 F.2d 1015, 1019 (3d Cir.1988), in turn citing, *In re Rouse,* 48 B.R. 236, 240 (Bankr.E.D.Pa.1985) and *Pennsylvania Co. for Insurances, supra.*). Legal title to the property does not pass to the purchaser until acknowledgment and delivery of the sheriff's deed. *Rouse,* 48 B.R. at 240. Therefore, as of the filing of the petition, the debtor retained legal title to, but no equitable interest in, the Property. *Donovan,* 183 B.R. at 702.

Pursuant to Pennsylvania law, as of the filing of the petition, the debtor retained only bare legal title to the Property. Accordingly, the bankruptcy estate, having no greater rights than those of the debtor created under state law, also had only bare legal title to the Property.

As noted by the *Spencer* court, "cause" for relief from the automatic stay in Section 362(d)(1) is not limited to situations when the moving party's interest is not adequately protected. *Spencer,* 115 B.R. at 476. The *Spencer* court noted that "cause" could be found in many situations, "including the situation where naked legal title to property has passed into the estate but the equitable title is held by another party." *Id.* (citing *In re Lally,* 38 B.R. 622, 626 (Bankr.N.D.Iowa 1984), *aff'd* 51 B.R. 204 (N.D.Iowa 1985)). Bankruptcy courts applying Pennsylvania law have agreed that these circumstances establish "cause" for relief from the stay so that a purchaser holding an equitable interest in a property can receive the deed. *Rouse,* 48 B.R. at 241. *See also, Brown,* 75 B.R. at 1012; *Donovan,* 183 B.R. at 702.

Accordingly, under these facts, Ocwen has established "cause" for relief from the automatic stay, *see* n. 12, *supra.;* conversely, the debtor has not carried her burden in opposition to the Stay Motion. 11 U.S.C. § 362(g)(2). The Stay Motion will be granted. An appropriate order follows.