217 F.3d 1072 (9th Cir. 2000)
 IN RE: ELMAR LEE PETTIT AND AUDREY JEAN PETTIT, DEBTORS.
IN RE: NORTH BAY PLUMBING, INC., DEBTOR.
MCCARTHY, JOHNSON & MILLER, A LAW FIRM; JOHN J. DAVIS; DIANE SIDD-CHAMPION, APPELLEES,
V.
NORTH BAY PLUMBING, INC.; ELMAR LEE PETTIT, A/K/A ELMAR LEE PETTIT; AUDREY JEAN PETTIT, DEBTORS-APPELLANTS.
IN RE: ELMAR LEE PETTIT AND AUDREY JEAN PETTIT, DEBTORS.
IN RE: NORTH BAY PLUMBING, INC., DEBTOR.
BAY AREA PIPE TRADES TRUST FUNDS, APPELLEES,
V.
NORTH BAY PLUMBING, INC.; ELMAR LEE PETTIT; A/K/A ELMAR LEE PETTIT; AUDREY JEAN PETTIT, DEBTORS-APPELLANTS.
 No. 99-15413, 99-15415
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted April 14, 2000
July 6, 2000
 
 [Copyrighted Material Omitted]
 Todd M. Bailey, McDonough, Holland & Allen, Sacramento, California, for appellants North Bay.
 Pamela C. Jackson, Pamela C. Jackson, Inc., Vacaville, California, for appellants Elmar Lee Pettit and Audrey Jean Pettit.
 Theodore W. Phillips, Phillips, Greenberg, Strain & Hauser, San Francisco, California, for appellees McCarthy Johnson & Miller.
 John J. Davis, Jr., McCarthy, Johnson & Miller, San Francisco, California, Steven A. Hirsch, Keker & Van Nest, L.L.P., San Francisco, California, for appellees Bay Area Pipe Trades Trust Funds.
 Appeals from the United States District Court for the Eastern District of California Frank C. Damrell, Jr., District Judge, Presiding D.C. No. CV-98-00641-FCD; D.C. No. CV-98-01175-FCD
 Before: Mary M. Schroeder, Robert R. Beezer, and Stephen S. Trott, Circuit Judges.
 
 Trott, Circuit Judge
 
 1
 Appellants Elmar Lee Pettit, his spouse Audrey Jean Pettit, and North Bay Plumbing, a corporation wholly owned by the Pettits (collectively "Pettits" or "Appellants"), appeal from a decision of the district court. The court reversed the bankruptcy court's determination that appellees -- Bay Area Pipe Trades Health & Welfare Trust Fund, Bay Area Trades Pension Trust Fund, Northern California Pipe Trades Health & Welfare Trust Fund, Northern California Pipe Trades Pension Trust Fun, U.A. Local 343 Health & Welfare Trust Fund, and U.A. Local 343 Pension Trust Fund; and counsel for these funds, the law firm of McCarthy, Johnson & Miller ("McCarthy, Johnson"), and two of its individual attorneys, John Davis, Jr. and Diane Sidd-Champion (collectively "Trust Funds") -- violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. S 362(a), by obtaining and retaining registry funds held by the court in connection with a lawsuit filed by the Trust Funds against Appellants.
 
 
 2
 The district court concluded that, at the time the Pettits filed for bankruptcy, theregistry funds were no longer property of their estate and, thus, were not subject to the automatic stay. On appeal, the Pettits argue that (1) the registry funds were property of the bankruptcy estate; and (2) even if the funds ultimately are found not to be property of the estate, where there is a bona fide dispute as to whether property is part of the bankruptcy estate, the burden should be on the creditor to seek a determination from the bankruptcy court as to whether the property is subject to the automatic stay. This court has jurisdiction pursuant to 28 U.S.C. S 158(d), and we AFFIRM the district court.
 
 I.
 
 3
 The Pettits are debtors in a bankruptcy case pending before the United States Bankruptcy Court for the Eastern District of California. The Trust Funds, which are established under Section 302 of the Labor Management Relations Act, 29 U.S.C. S 186, manage the employee benefit contributions that Appellants were required to pay under a collective bargaining agreement.
 
 
 4
 In 1987, the Trust Funds sued the Pettits in the United States District Court for the Northern District of California for violations of federal labor law and, in 1992, obtained a $4.55 million award on summary judgment. The Pettits appealed, and execution of judgment was stayed pending appeal on condition that the Pettits deposit $700,000 into the district court's registry fund in lieu of a supersedeas bond. On appeal, this court reversed the district court's grant of summary judgment and remanded the matter for trial.
 
 
 5
 Following the Ninth Circuit's ruling, and pending trial, the Pettits moved to release the $700,000 in security held in the court's registry. This motion was denied. At the same time, the Trust Funds applied for a prejudgment writ of attachment, attempting to attach "virtually all of [the Pettits'] business assets." Before the district court formally ruled on this motion, however, the Pettits, the Trust Funds, and the district court reached an agreement, whereby the Trust Funds' motion for prejudgment attachment would be denied on condition that the $700,000 would remain in the court's registry as judgment security for the upcoming trial on the merits and would not be released "pending further order of the court."
 
 
 6
 The trial resulted in a $1.8 million jury verdict in favor of the Trust Funds and judgment was entered on April 15, 1996. The award also entitled the Trust Funds to attorneys' fees, for which they claimed an excess of $1.2 million. The Pettits appealed the judgment, which this court recently affirmed in a published opinion. See Local 159 v. Nor-Cal Plumbing, 185 F.3d 978 (9th Cir. 1999).
 
 
 7
 Following the trial, the Pettits moved for (1) judgment as a matter of law; (2) a new trial; (3) a stay of execution pending appeal to the Ninth Circuit; and (4) a reduction or waiver of the funds in the court's registry serving as judgment security which, because the district court permitted the Pettits to make two withdrawals for legal fees before trial, totaled approximately $523,000 at the time of the verdict. On May 21, 1996, the district court denied all of the Pettits' motions and ordered the balance of the registry funds to be released to the Trust Funds. In discussing a possible stay of execution, Judge Illston stated:
 
 
 8
 Well, my concern is, I want the stay to be lifted in this court before the bankruptcy court asserts jurisdiction over any of the assets in this court.... If there's a bankruptcy filing that intervenes, I think that does make things very much more complicated than they should be. I do not think that should happen before this court has an opportunity to release the funds if there is no stay.
 
 
 9
 Moreover, when asked if the court intended to release the funds that day, Judge Illston responded:I was going to sign [the Order Directing Clerk's Release of Funds] today because I didn't want the bankruptcy filing to interfere with that process. But if I get a stipulation from defendants that they won't file the bankruptcy until the issue of the stay in the Ninth Circuit is resolved, and these funds can be released if it's denied, then I won't sign it today.
 
 
 10
 After consulting with his clients, the Pettits' counsel withdrew the request for a stay pending appeal. Accordingly, Judge Illston immediately signed the order releasing the funds in the court registry to the Trust Funds. The "Order Directing Clerk's Release of Funds," executed and filed on May 21, 1996, provided that:
 
 
 11
 A judgment having been entered on the jury's verdict herein, the Clerk of the court is hereby directed to release all funds being held on deposit in this action and to disburse said funds, including accrued interest, to the law firm of McCarthy, Johnson & Miller as attorneys for the plaintiffs herein.
 
 
 12
 Because no one was available in the clerk's office after the hearing, counsel for the Trust Funds could not get a check for the registry funds issued that evening.
 
 
 13
 Hours after Judge Illston signed the order directing the clerk to release the funds, the Pettits filed bankruptcy petitions in the Eastern District of California under Chapter 11 of the Bankruptcy Code. Specifically, the Chapter 11 petition for Elmar and Audrey Pettit was filed at 8:49 p.m. on May 21, 1996, and the petition for their corporation, North Bay Plumbing, was filed earlier in the day at 4:56 p.m. After filing the petitions, counsel for the Pettits notified the Trust Funds' counsel that the Pettits and North Bay had filed bankruptcy petitions, and that "any action taken by you or your clients to enforce any judgment would be in violation of the automatic stay provisions of 11 U.S.C. S 362(a)."
 
 
 14
 The following morning, May 22, 1996, John J. Davis, Jr., an attorney with McCarthy, Johnson, counsel for the Trust Funds, went to the clerk's office at the United States District Court for the Northern District of California and obtained a check for $523,117.69 drawn on the court's registry account, pursuant to the "Release of Funds" order signed the day before by Judge Illston. Before the check was actually issued, Mr. Davis and the courtroom deputy clerk passed by the court clerk's office where an attorney employed by the Pettits' law firm was waiting for the public counter to open so that he could deliver a letter informing the district court about the bankruptcy petitions. When the public counter opened, the Pettits' attorney delivered the letter about the bankruptcy petitions and explained its urgency. However, the clerk told the attorney that the check had already been issued.
 
 
 15
 With check in hand, Mr. Davis proceeded directly from the courthouse to the Bank of America branch where McCarthy, Johnson maintained its firm trust account and deposited the $523,117.69 into the account. Subsequently, counsel for the Pettits sent McCarthy, Johnson three letters notifying the Trust Funds that they had violated the automatic stay in bankruptcy and demanding that they return the funds to the Pettits. The Trust Funds refused to return the funds.
 
 
 16
 Faced with this refusal, on July 10, 1997, more than a year after filing their bankruptcy petitions, the Pettits moved the bankruptcy court to hold the Trust Funds in contempt for willful violation of the automatic stay provisions under 11 U.S.C. S 362(a) ("section 362") and for an order compelling the return of estate assets seized in violation of the stay.
 
 
 17
 The bankruptcy court held a hearing on the motion and, on December 11, 1997, issued an order holding that the Trust Funds and their attorneys violated section 362(a)(2) and (3) "[b]y obtaining and negotiating the check and maintaining controlof the proceeds."[1] Implicit in the bankruptcy court's order was a finding that, at the time the Pettits filed their bankruptcy petitions, the funds in the court's registry were property of their estate.
 
 
 18
 The Trust Funds appealed to the district court. The district court reversed, concluding that the funds never became property of the Pettits' bankruptcy estate, because the Pettits' entire property interest had been extinguished by the entry of judgment against the Pettits and Judge Illston's order to release the registry funds. The Pettits now appeal to this court.
 
 II.
 A. Standard of Review
 
 19
 We review the district court's decision on an appeal from a bankruptcy court de novo. See Wilbur v. Wilbur, 126 F.3d 1218, 1219 (9th Cir. 1997). Moreover, whether the automatic stay provisions of section 362 have been violated is a question of law that we also review de novo. Del Mission Ltd. v. Traxel, 98 F.3d 1147, 1150 (9th Cir. 1996).
 
 B. Property of the Bankruptcy Estate
 
 20
 The sole issue in this appeal is whether, at the time the Pettits filed their bankruptcy petitions, the funds in the registry of the Northern District of California were property of the Pettits' estate. If the funds were "property of the estate," the Trust Funds violated the automatic stay by willfully obtaining and retaining the funds after the Chapter 11 petitions were filed. If, on the other hand, the registry funds were not "property of the estate," they were not subject to the automatic stay, and the Trust Funds acted appropriately by obtaining the money. The district court concluded that the funds were not property of the estate and reversed the bankruptcy court's contrary decision. We agree.
 
 
 21
 The automatic stay under section 362 is designed to give the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations. See MacDonald v. MacDonald (In re MacDonald), 755 F.2d 715, 717 (9th Cir. 1985). The stay is selfexecuting, effective upon the filing of the bankruptcy petition, see Minoco Group of Cos. v. First State Underwriters Agency of New Eng. Reins. Corp. (In re Minoco Group of Cos.), 799 F.2d 517, 520 (9th Cir. 1986), and sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. S 362(a)(6).
 
 
 22
 The automatic stay applies only to property of the bankruptcy estate, see id. S 362, which is defined broadly as "all legal or equitable interests of the debtor in property as of the commencement of the case." Id. S 541. Here, because the Pettits had no legal or equitable interest in the registry funds when they filed for bankruptcy, we hold that the funds never became property of the bankruptcy estate and, thus, the Trust Funds never violated the automatic stay.
 
 
 23
 1. Property Interest Extinguished After Judgment
 
 
 24
 The district court concluded that the registry funds were never property of the bankruptcy estate, because the Pettits'property interest in the funds was extinguished once the jury found in favor of the Trust Funds and the district court entered judgment against the Pettits.
 
 
 25
 Although the question whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. See Butner v. United States, 440 U.S. 48, 54-55 (1979). Under California law, property is defined as "the thing of which there may be ownership." Cal. Civ. Code. S 654. "The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others." Id.
 
 
 26
 By agreement of the parties, the registry funds at issue in this case were being held by the district court as judgment security in the event the jury ruled against the Pettits at trial. Before trial and entry of the adverse judgment by the district court, the Pettits had a contingent property interest in the registry funds. See, e.g., Tolz v. Lockwood (In re Mount Claire, Inc.), 131 B.R. 231, 233 (S.D. Fla. 1991) (concluding that when state court determined registry funds to be the sole property of the creditor and ordered their release, debtor's interest in the funds was extinguished); Carlson v. Farmers Home Admin. (In re Newcomb), 744 F.2d 621, 625-27 (8th Cir. 1984) (holding that debtor lost all interest in funds held in escrow for judgment security pending appeal when lower court judgment was affirmed). The contingency was that the jury would find in their favor. If the jury had indeed found in favor of the Pettits, the registry funds would not have been needed to satisfy an adverse judgment and, in all likelihood, legal and equitable title over the funds would have reverted to the Pettits.
 
 
 27
 Unfortunately for the Pettits, however, this contingency never came to pass. The jury ruled against them. Thus, when judgment was entered in favor of the Trust Funds, the Pettits' contingent interest was extinguished. See, e.g., Mount Claire, 131 B.R. at 233. Once this interest was extinguished, it is clear that under California's definition of "property," as well as under any general theory of ownership, the registry funds no longer belonged to the Pettits.
 
 
 28
 The Pettits and the Trust Funds agreed to leave approximately $523,000 in the court's registry to secure payment to the Trust Funds if they prevailed at trial. The Trust Funds did prevail and, after judgment was entered against the Pettits, the Pettits had none of the rights we associate with legal or equitable ownership: they could not possess the funds, use the funds, sell the funds, loan the funds, give away the funds, encumber the funds, or exclude others from using the funds. See, e.g., Moore v. Regents of the Univ. of Cal., 51 Cal. 3d 120, 165 (1990) (noting that "the concept of property is often said to refer to a bundle of rights that may be exercised with respect to that object--principally the rights to possess the property, to use the property, to exclude others from the property, and to dispose of the property by sale or by gift.") (internal quotations and citations omitted). After judgment was entered, the funds rightfully belonged to the Trust Funds as the prevailing party at trial.
 
 
 29
 Because the Pettits retained no legal or equitable ownership interest over the funds once judgment was entered, the funds never became "property of the estate" and were never subject to the automatic stay under section 362. Accordingly, the Trust Funds acted perfectly appropriately in obtaining the check from the clerk of the court on May 22, 1996.
 
 
 30
 In contrast to our holding and that of the district court, the bankruptcy court concluded that the funds were indeed property of the bankruptcy estate and noted that:The salient fact about the deposit's status as property of the estate is that if the Pettits and North Bay ultimately were to prevail in the district court litigation, the funds that were on deposit in the registry of the court would have to be paid to the Pettits and/or North Bay. That constitutes an interest in property within the meaning of 11 U.S.C. S 541.
 
 
 31
 The bankruptcy court also stated that the funds were property of the Pettits' estate when the bankruptcy petitions were filed on the evening of May 21, 1996, because "it is settled that the actual transfer of funds from the registry of the court did not occur until after the drawee bank honored the district court clerk's check." This reasoning assumes that the registry funds were property of the estate when the clerk issued the check on May 22, 1996.
 
 
 32
 The bankruptcy court's reasoning was incomplete. While the court correctly stated that the Pettits had an interest in the funds before the pending trial, it failed to take the next step and analyze the property interests after judgment was entered against them. The time period relevant to assessing what interest, if any, the Pettits had in the registry funds was at the time the bankruptcy petitions were filed. The Pettits did not file their bankruptcy petitions until May 21, 1996, over a month after judgment was entered. By this date, as discussed above, the Pettits had lost at trial and their contingent interest in the funds had been extinguished. The funds never became property of the bankruptcy estate. The contrary determination by the bankruptcy court was incorrect, and the district court properly reversed.
 
 
 33
 The Pettits advance four arguments as to why the funds remained their "property" despite entry of the adverse judgment. All are unpersuasive. First, the Pettits argue that the entry of judgment against them following the jury's verdict did not extinguish their property interest in the registry funds because the parties never agreed that the Pettits' interest in the funds would be extinguished in this instance. We reject this argument because, although the parties may not have agreed specifically that the Pettits' interest would be extinguished, they did agree that the funds would serve as "security" for an adverse judgment. It was not necessary for the Pettits and the Trust Funds to agree to any further details regarding ownership or use of the funds.
 
 
 34
 Second, the Pettits argue that their property interest could not have been extinguished after entry of judgment, because they could have used the funds as a portion of a new supersedeas bond for the appeal of the Northern District judgment. While this argument has some initial appeal, it is ultimately not persuasive. The funds could have been used as a supersedeas bond only if the district court granted the Pettits' request for a stay pending appeal and allowed the funds to be so used. See Fed. R. Civ. P. 62 (providing that "[t]he stay is effective when the supersedeas bond is approved by the court."). If this had occurred, the district court would have created a new contingent property interest in favor of the Pettits. This did not happen. Counsel for the Pettits withdrew the request for a stay of execution, and the district court never considered whether the funds could or would be used as a bond. There was no contingent interest created.
 
 
 35
 Third, the Pettits argue that, because the district court allowed them to withdraw approximately $200,000 from the original $700,000 deposited in the court's registry to help with legal fees, the Pettits must have had some property interest in the funds. This argument is not helpful to the Pettits because the district court allowed them to withdraw these funds before trial and before judgment was entered against them.
 
 
 36
 Finally, the Pettits appear to argue that the funds were not actually "judgment security." This argument is without merit. Judge Illston, the Trust Funds, and the Pettits all referred to the funds, at one point or another, as "security, " and thereis no doubt that this was what the funds were to be used for.
 
 
 37
 In sum, the Pettits' interest in the registry funds was extinguished upon entry of judgment against them and, thus, when they filed for bankruptcy under Chapter 11, the funds were no longer property of their estate. The Trust Funds, therefore, did not violate the automatic stay under section 362 by obtaining and retaining the funds, and the district court properly reversed the order of the bankruptcy court.
 
 
 38
 2. Property Interest Extinguished When Order Was Signed
 
 
 39
 In addition to its conclusions regarding the effect of the April 15, 1996 judgment, the district court held that, assuming the Pettits had some vestigial property interest remaining in the funds after judgment was entered against them, this interest was extinguished when Judge Illston signed the "Release of Funds" order on May 21, 1996, hours before the Pettits filed for bankruptcy. Specifically, the court noted that, although the Trust Funds did not actually receive the check from the clerk of the court until after the bankruptcy petitions were filed, it was the judicial act of signing the order to release the funds that was relevant. The clerk's subsequent involvement was only to issue the check, which was not a discretionary act and was thus purely ministerial. The district court held that this ministerial act had no effect on the ownership of the funds, which had already been legally transferred to the Trust Funds when Judge Illston signed the order. We agree.
 
 
 40
 In its analysis, the district court applied what other circuits have termed the "ministerial act" exception to the automatic stay provisions of the bankruptcy code. See, e.g., Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 97374 (1st Cir. 1997) (noting that ministerial acts, even if undertaken in a state judicial proceeding subsequent to a bankruptcy filing, do not fall within the proscription to the automatic stay); Rexnord Holdings, Inc. v. Biderman, 21 F.3d 522, 527 (2nd Cir. 1994) (holding that act of entry of judgment by court clerk was ministerial act and did not violate stay). This exception stems from the common-sense principle that a judicial "proceeding" within the meaning of section 362(a) ends once a decision on the merits has been rendered. Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such a proceeding. We now adopt the ministerial act exception for this circuit and apply it to the case before us.
 
 
 41
 Applying the logic of the exception, the judicial proceeding in this case ended once Judge Illston signed the order to release the funds. The clerk of the court had no discretion as to whether to issue the check to the Trust Funds and her act was, therefore, purely ministerial. As such, because the judicial act concluded when Judge Illston signed the order, which occurred hours before the bankruptcy filings, the registry funds never became property of the bankruptcy estate and the Trust Funds did not violate the automatic stay.
 
 
 42
 This result comports with Judge Illston's intent at the proceeding. It is clear that Judge Illston intended for the registry funds to be transferred to the Trust Funds upon signing the order, to avoid any overlap with a bankruptcy filing. Specifically, when the Pettits refused to stipulate to not filing for bankruptcy, Judge Illston explained: "Okay. The consequence of that will be, I'll sign the order releasing the funds." The clerk's subsequent act of issuing the check was clearly outside the judicial function and, thus, ministerial. See Rexnord Holdings, 21 F.3d at 527.
 
 
 43
 To hold otherwise and conclude that the registry funds did not become the Trust Funds' property until the clerk actually issued the check and physically handed it to Mr. Davis, the Trust Funds' attorney, would result in an arbitrary outcome. If the clerk of the court had not gone home early on May 21, 1996, the Trust Fundswould have been able to obtain their check for $523,117.69 immediately, before the Pettits had an opportunity to file for bankruptcy. Instead, because the clerk was not available, counsel for the Trust Funds came back the following morning. By this time, the bankruptcy filings were already complete. The outcome of this case should not hinge on the clerk's whereabouts on a given afternoon, and the arbitrariness of such a result further supports our decision to apply the ministerial act exception.
 
 
 44
 The Pettits' arguments fail. The district court's analysis, including its use of the ministerial act exception, was correct. Accordingly, we affirm the district court and conclude that the Trust Funds did not violate the automatic stay provisions under section 362[2].
 
 III.
 
 45
 As an alternative to their first argument, that the funds were property of their bankruptcy estate, the Pettits argue that, should the panel ultimately conclude that the registry funds were not property of the estate at the time the Chapter 11 petitions were filed, we should nevertheless rule in their favor and hold that, where there is a bona fide dispute as to whether property is in the bankruptcy estate, the burden should be on the creditor to seek a determination from the bankruptcy court before obtaining the disputed property. The Pettits acknowledge that this holding is not dictated by current case law and would be an extension of Ninth Circuit precedent.
 
 
 46
 We decline the Pettits' invitation to extend current precedent. Here, where there was a specific order releasing funds signed by the district court, and a clear intention that the property be transferred prior to a bankruptcy filing, the "good faith dispute" argument is not convincing. The Pettits' case simply does not present an appropriate factual scenario in which to craft a novel rule on this issue.
 
 IV.
 
 47
 For the foregoing reasons, we conclude that the funds in the court's registry were not property of the estate at the time the Pettits filed their bankruptcy petitions and, thus, the Trust Funds did not violate the automatic stay provisions of section 362. Accordingly, we AFFIRM the district court's decision to reverse the bankruptcy court and terminate all adverse proceedings against the Trust Funds[3].
 
 
 
 NOTES:
 
 
 [1]
 Pursuant to section 362(a)(2), a bankruptcy petition operates as a stay of the "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." Under section 362(a)(3), a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate."
 
 
 [2]
 As they did in the district court, the Trust Funds also argue that the registry funds were not property of the estate because they were subject to a constructive trust or, alternatively, were in custodia legis. In light of our decision that entry of judgment and Judge Illston's subsequent order extinguished the Pettits' rights in the registry funds, we need not consider these alternative arguments advanced by the Trust Funds.
 
 
 [3]
 McCarthy, Johnson attorneys Davis and Sidd-Champion assert that the bankruptcy court order violated their due process rights because they did not have notice of any claims against them and did not have an opportunity to be heard. This issue is no longer relevant in light of our conclusion that the registry funds never became property of the bankruptcy estate.