**In re Debra K. McLOUTH, Debtor.**

**Debra K. McLouth, Appellant/Debtor,**

v.

**Advanta Mortgage Corporation, Appellee.**

Nos. 00–51569–RBK–13, CV 00–177–M–DWM.

United States District Court, D. Montana, Missoula Division.

Sept. 28, 2001.

Gregory E. Paskell, Attorney at Law, Kalispell, MT, for appellant.

Richard J. Samson, Christian, Samson & Jones, Missoula, MT, for appellee.

Robert G. Drummond, Great Falls, MT, trustee.

## ORDER

MOLLOY, Chief Judge.

This case is an appeal from an order of the United States Bankruptcy Court dated July 24, 2000, denying Debtor/Appellant Debra K. McLouth's motion for turnover of a piece of property and for sanctions. McLouth has appealed to this Court, claiming that the Bankruptcy Court misapplied the law. The issues were fully briefed on March 30, 2001.

### I. Factual Background

The material facts of the case are not in dispute. Appellee Advanta Mortgage Corporation (Advanta) was the beneficiary under a trust indenture, in which McLouth had given Advanta a security interest in a certain piece of real property. McLouth defaulted on the underlying debt, and after properly giving proper notice of default under the trust, Advanta conducted a trustee's sale of Advanta's interest in the property at or about 11:00 a.m. on June 21, 2000, on the steps of the Flathead County Courthouse. At this sale, the property was sold for $87,000 to a Robert J. Rinke, who tendered the funds to the trustee

under the trust agreement. The trustee then executed a trustee's deed conveying the property to Rinke.

At 4:59 pm on the same date as the trustee's sale—after the execution of the deed, but before the deed had been recorded—McLouth filed her Chapter 13 petition. The deed was recorded several days later.

McLouth urges the Court to rule that the automatic stay provision of the Bankruptcy Code should have prevented the trustee sale from occurring, even though the sale actually occurred before the filing of the bankruptcy petition. In essence, McLouth argues that the Court should read a "unified day" rule into the automatic stay provision—that is, that the statute requires all debt collection activities to stop on the *date* that the bankruptcy petition is signed, rather than *at the time* the petition is signed.

## II. Analysis

A. Does the unified day rule apply for purposes of determining when the automatic stay takes effect?

■ McLouth cites a United States Bankruptcy Court case from Montana, in which the "unified day" rule was adopted with respect to the filing of a homestead declaration that was not filed until after the filing of the bankruptcy petition. McLouth argues that the same policy considerations that led the Bankruptcy Court to its conclusion should also apply to the present situation.

Advanta, on the other hand, simply points out that the plain language of the statute does not appear to support the proposition that the "unified day" rule should apply. Furthermore, Advanta goes on to cite several Ninth Circuit cases that state that the automatic stay is "effective upon filing of a bankruptcy petition." This language, argues Advanta, seems to suggest that the "unified day" rule should not apply.

The automatic stay provision in the Bankruptcy Code is found at 11 U.S.C. § 362 (1994). That statute provides, in relevant part, that:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ....

Neither the parties nor the Court has found controlling case law on the issue of whether McLouth's "unified day" rule should be applied. She cites *In re Dillree*, 12 M.B.R. 398 (Bankr.D.Mont.1993), for the proposition that the Montana Bankruptcy Court has adopted the "unified day" rule. However, Bankruptcy Court decisions are not controlling authority to this Court, and furthermore, the case appears to be factually and legally distinguishable. In *Dillree*, the debtor filed a bankruptcy petition at 9:00 am, and filed a declaration of homestead exemption at 4:57 that evening. The Trustee argued that because the homestead exemption was not filed at the time of the filing of the petition, no homestead exemption should be allowed. The Bankruptcy Court applied the "unified day" rule in that context to allow the homestead exemption. However, it is important to note that exemptions under the Bankruptcy Code are governed by § 522. In defining what property is exempt, § 522(b)(2)(A) states that exempt-

ed property includes "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law *that is applicable on the date of the filing of the petition*" (emphasis added).

As noted by Advanta in its brief, the Ninth Circuit has stated that the automatic stay is "effective upon the filing of the bankruptcy petition." *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir.2000); *In re Pettit*, 217 F.3d 1072, 1077 (9th Cir.2000).

Despite the absence of binding case law directly addressing the issue, the plain language of the statute and the case law that generally applies the automatic stay provision does not support McLouth's "unified day" theory. While making no reference to the exact time at which the automatic stay goes into effect, the statute simply says that "a petition ... operates as a stay." 11 U.S.C. § 362(a) (1994). If Congress had intended for the stay to go into effect on the *date* of filing of the petition, it could have drafted the statute to say so. The statute might be more clear if it stated explicitly that the stay takes effect at the time of filing (or otherwise, if that were Congress's intent). However, without reading anything into the statute that is not already there, I would conclude that Congress intended for the automatic stay to take effect as of the *moment* of filing, rather than as of the *date* of filing. To read the rule as McLouth argues presents an opportunity for mischief that the law does not recognize but the unified day rule would.

Furthermore, as Advanta points out, there are other sections of the Bankruptcy Code where Congress has chosen to make certain things effective on the date of filing. For example, § 522(b)(2)(A) is the provision that gives effect to state or local laws that provide exemptions from execution of judgments. § 522(b)(2)(A) refers specifically to laws in effect on the "date of filing," and to the state law of the state where the debtor has resided for at least 180 days "prior to the date of filing." If Congress intended for the automatic stay to take effect as of the date of filing, it would have used similar language in § 362.

Finally, the Ninth Circuit cases cited above, *In re Gruntz* and *In re Pettit*, both state that the automatic stay is "effective upon the filing of the bankruptcy petition." In these cases, the Ninth Circuit was not considering the possibility of a "unified day" rule, so these statements are dicta. Nevertheless, they can be taken as some indication of how the Ninth Circuit views the issue. In the absence of authority to the contrary, I conclude that the Ninth Circuit would not apply a "unified day" rule under that circumstance.

For all of the reasons stated above, the "unified day" rule advanced by McLouth does not apply. Therefore, the automatic stay was not in effect at the time of the Trustee's sale.

B. Did McLouth have a property interest in the real property at issue that should have been protectable by the automatic stay because of Mont.Code Ann. § 71–1–319?

▮ Aside from the "unified day" theory, McLouth also advances two other arguments as to why the property should have been protected by the automatic stay. First, she argues that under Montana law, a debtor has a statutory right to occupy the property for ten days following a trustee's sale of the subject property of a trust indenture. For this proposition, she cites Mont.Code Ann. § 71–1–319 (1999). That statute provides that a purchaser at a trustee sale is entitled to take possession of the property ten days following the sale. McLouth apparently argues that this implicitly means that a debtor has a right to occupy the property for ten days. There-

fore, she argues, she had a statutory interest in the property at the time of the filing of the petition, and that interest should have been protected by the automatic stay.

■ This argument can be summarily dismissed. Even if one accepts McLouth's reading of the statute, the fact remains that she had, at the very most, the right to occupy the property for ten days. Furthermore, the right to occupy the property for ten days following the sale did not arise until the time of the trustee's sale. It is nonsensical to argue that the trustee's sale itself was an infringement on that right. The automatic stay protects the debtor's property from creditors, but only to the extent that the debtor has a property interest; it does not transform the right to occupy the property for ten days into an interest in fee simple.

C. Was the property part of the bankruptcy estate at the time of the filing of the bankruptcy petition on account of the fact that the deed had not been delivered or recorded at the time of filing of the petition?

■ Finally, McLouth argues that the property at issue was property of the bankruptcy estate on the grounds that the trustee's sale of the property was not complete until the time that the deed was recorded. If this is correct, then the property at issue would be part of the bankruptcy estate, and the automatic stay would have prevented the trustee's sale from being completed.

Advanta argues that McLouth's interest in the property was divested at the time the trustee's sale was complete, by the execution of the trustee's deed in favor of the purchaser. Advanta argues that under Montana law, recordation of the deed is not relevant to determine whether McLouth had an interest in the property that should have been protected by the automatic stay. Furthermore, Advanta cites a Montana statute that says that a deed, whether or not recorded, is nevertheless valid against parties to the agreement and against those who have notice of the deed's existence.

■ As noted by the Bankruptcy Court, 11 U.S.C. § 541(a)(1) (1994) includes in the bankruptcy estate all legal or equitable interests of the debtor in property at the commencement of the case. To determine whether a debtor has a legal or equitable interest in property, and the extent of any such interest, a court must look to the applicable state law. *In re Contractors Equipment Supply Co.*, 861 F.2d 241, 244 (9th Cir.1988).

In the present case, then, I must determine what rights, if any, McLouth had with respect to the property at the time of the filing of the bankruptcy petition at 4:59 pm on June 21, 2000, under Montana law. At that time, the trustee's sale had already been conducted, and the purchaser had already tendered $87,000 in certified funds for the full amount of the purchase price. Upon receipt of the purchase price, the trustee then executed a trustee's deed conveying the property to the purchaser.[1] The purchaser then recorded the deed some time after the filing of the bankruptcy petition.

Trust indentures in Montana are governed by the Small Tract Financing Act

---

1. McLouth argues that the trustee's deed was not actually delivered until some time after the bankruptcy petition had been filed. However, that assertion is contrary to the findings of the Bankruptcy Court, and McLouth has pointed to no evidence supporting her assertion. Therefore, the Bankruptcy Court's finding on that particular issue will be upheld, and this Court will assume that the deed had been delivered at the time the bankruptcy petition was filed.

(the "Act"), which is codified at Mont.Code Ann. §§ 31–1–301 *et seq.* (1999). The parties in this case agree that the trustee complied with the requirements of the Act in the sale of the property. What is at issue here is whether McLouth still has an interest in the property following a trustee sale prior to the recording of the trustee's deed.

Mont.Code Ann. § 71–1–315 (1999) sets forth the procedure for conducting a trustee's sale. After giving proper notice to certain parties (which the parties have agreed was done in this case), the statute provides that the property is to be sold to the highest bidder at a public auction. Mont.Code Ann. § 71–1–315(3) (1999). The statute provides that the purchaser is to pay the full purchase price in cash, and upon receipt of the purchase price, the trustee is to execute a trustee's deed to the purchaser. Mont.Code Ann. § 71–1–315(4) (1999).

The effect of the trustee's deed is laid out at Mont.Code Ann. § 71–1–318 (1999). Subsection (3) of that statute states as follows:

> The trustee's deed shall operate to convey to the purchaser, without right of redemption, the trustee's title and all right, title, interest, and claim of the grantor and his successors in interest and of all persons claiming by, through, or under them in and to the property sold, including all such right, title, interest, and claim in and to such property acquired by the grantor or his successors in interest subsequent to the execution of the trust indenture.

As used in the above statute, the term "grantor" is defined as "the person conveying real property by a trust indenture as security for the performance of an obligation"—in other words, the debtor under the trust indenture. Mont.Code Ann. § 71–1–304(2) (1999). Furthermore, Mont.

Code Ann. § 70–21–102 (1999) states that an unrecorded instrument is nevertheless valid as between its parties and those who have notice of it.

McLouth cites a number of Bankruptcy Court and Ninth Circuit cases from California for the proposition that under California's race-notice recording statute, a bankruptcy trustee can avoid the interest of a bona fide purchaser of real property if the BFP's deed is not recorded prior to the filing of the bankruptcy petition. The Debtor argues that because Montana is also a race-notice jurisdiction, the same rule should apply here. However, if the issue can be resolved under existing Montana law, it would be inappropriate for this Court to delve into the intricacies of California's statutes and their application in the cited cases or to rely on California authority. Likewise, Advanta has also cited cases from other jurisdictions for the proposition that a trustee's sale is complete at the "fall of the hammer," and that therefore, recording is not required. Again, however, those courts were applying the real property laws of other states, and should not be relied on by this Court if the issue can be resolved under Montana law.

This Court must determine what rights McLouth had in the real property under Montana law at the time the bankruptcy petition was filed. Contrary to her position, the plain language of Mont.Code Ann. § 71–1–318(3) simply does not insert a requirement that the Trustee's Deed be recorded in order for the trustee's sale to be complete. The statute requires only that the highest bidder tender the full purchase price in cash, and upon tender of the purchase price, the statute requires the trustee to execute a trustee's deed conveying all of the debtor's interest in the property to the purchaser. Since all of these steps were taken in the present case, the trust-

ee's sale was complete before the bankruptcy petition was filed, and McLouth therefore had no interest in the property immediately prior to the filing of the bankruptcy petition.

McLouth's argument that Montana is a race-notice jurisdiction, and therefore a subsequent bona fide purchaser would have had priority over the trustee sale purchaser's unrecorded interest, fails for at least two reasons. First, while it is true that under the Bankruptcy Code the trustee generally occupies the position of a bona fide purchaser, the bankruptcy trustee is not a party to this action; therefore, whatever rights the bankruptcy trustee would or would not have are irrelevant. Secondly, Mont.Code Ann. § 70–21–102 states that the trustee's deed, although unrecorded, is still binding on the parties and on those who have notice of it. In compliance with the Small Tract Financing Act, the trustee gave McLouth notice of the date and time of the trustee's sale. Therefore, McLouth had notice of the impending existence of a trustee's deed.

For these reasons, the real property in question here was not part of McLouth's estate in bankruptcy. Therefore, it was not protected by the automatic stay. If McLouth wished to be able to avoid the trustee's deed, she could have done so by filing her bankruptcy petition six hours earlier, before the trustee's sale. She did not. She is not entitled to the protection of the automatic stay.

Accordingly, IT IS HEREBY ORDERED that the Order of the Bankruptcy Court is AFFIRMED.