
**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ROBERT DUANE RENS,<br><div align="center">Debtor.</div> | BAP No. SC-20-1131-LGH<br><br>Bk. No. 17-04050-LA7 |
| CHERI LEE HUBKA SPARHAWK, as Trustee of the Trust Agreement of Elmer Rens and Jeanne Rens, dated January 6, 1977, also known as the Elmer and Jeanne Rens Trust,<br><div align="center">Appellant,</div>v.<br>GERALD H. DAVIS, Chapter 7 Trustee; ROBERT DUANE RENS; RENS CHILDREN, JENNIFER, JEFFREY, JODY, AND JULIE (SMITH),<br><div align="center">Appellees.</div> | Adv. No. 19-90067-LA<br><br><br><br><br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Louise DeCarl Adler, Bankruptcy Judge, Presiding

APPEARANCES:

Jon R. Williams of Williams Iagmin LLP argued for appellant; Richard C. Norton of Norton Moore & Adams, LLP, argued for appellee Gerald H. Davis, Chapter 7 Trustee; Benazeer Roshan of Greenberg Glusker Fields Claman & Machtinger LLP argued for intervening appellees Rens Children, Jennifer, Jeffrey, Jody, and Julie (Smith).

Before: LAFFERTY, GAN, and HESTON,[1] Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

## INTRODUCTION

This appeal requires us to determine the extent of a bankruptcy estate's interest in, and—perhaps more importantly—its ability to realize upon, future distributions from an inter vivos trust. Cheri Lee Hubka Sparhawk, in her capacity as Trustee of the Elmer and Jeanne Rens Trust ("Trust"), appeals the bankruptcy court's judgment ordering her to turn over to the chapter 7[2] trustee ("Trustee") a portion of all future Trust distributions as they are paid to debtor Robert Duane Rens ("Debtor"). Ms .Sparhawk disputes only the portion of the judgment that requires her to continue to turn over such distributions after Debtor's death.

The bankruptcy court found that the bankruptcy estate's interest in the Trust was fixed as of the petition date and thus would not be affected by Debtor's subsequent death. It also found that the Trust did not provide for the termination of Debtor's interest in the Trust upon his death, and, because his living issue were to take his share "by right of representation,"

---

[1] Hon. Mary Jo Heston, United States Bankruptcy Judge for the Western District of Washington, sitting by designation.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Civil Rule' references are to the Federal Rules of Civil Procedure, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

their share would also be subject to the same 25% deduction as applied to Debtor's share while he was living.

We disagree with the bankruptcy court's interpretation of the applicable authorities and the Trust documents. While the estate's rights in future distributions from an inter vivos trust are fixed as of the petition date, the estate's ability to realize on those rights is subject to the same contingencies that would have applied to the debtor's right to receive distributions. Here, the Trust implicitly terminates Debtor's interest upon his death. It provides that when Debtor dies, the distributions that would have gone to him are to be distributed in equal shares to his living issue, by right of representation. We disagree with the bankruptcy court that this provision means that distributions to Debtor's living issue are subject to the same carveout for the estate as those paid to Debtor.

We therefore REVERSE.

## FACTS[3]

### A.   Pre-petition Events

In 1977, Debtor's parents created the Rens Family Trust (the "Trust"), for the benefit of their three children, Corinne Hubka, Lee Rens, and Debtor (the "Intended Beneficiaries"). The Trust, which contains a spendthrift provision, was amended three times, in 1981, 1985, and 1998.

---

[3] Where necessary, we have exercised our discretion to take judicial notice of the dockets and imaged papers filed in Debtor's bankruptcy case and the related adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Because Debtor's parents are deceased, the Trust was irrevocable as of the petition date. At the time the bankruptcy court entered the judgment on appeal, Debtor was in his early 80s and had four living children: Jennifer Rens, Jeffrey Rens, Jody Rens, and Julie Smith (the "Intervenors").

The Trust has been partially distributed. The remaining Trust assets consist of: (1) the right to future rental income from a ground lease for real property located in San Diego (the "Miramar Park Property"); and (2) Trust principal, which includes a 50% interest in the Miramar Park Property. The ground lease generates around $14,000 in monthly rental income, which is to be distributed equally each month to the Intended Beneficiaries, or to the living issue of a deceased Intended Beneficiary "by right of representation." These distributions are subject to deductions for the fees and expenses of Ms. Sparhawk.

The Trust will terminate upon expiration of the ground lease on July 31, 2035 (the "Trust Termination Date"), at which point the Trust principal is to be distributed equally to the Intended Beneficiaries or to the living issue of a deceased Intended Beneficiary "by right of representation." Debtor's brother and sister are now deceased, and Ms. Sparhawk is making distributions under the Trust to their living issue.

## B.     Bankruptcy Events

Debtor filed a chapter 7 petition in July 2017. Trustee filed an adversary proceeding against Debtor and Ms. Sparhawk, in her capacity as trustee of the Trust, seeking: (1) a declaration that 25% of Debtor's income

4

payments from the Trust from the petition date through the expiration of the ground lease in 2035 is property of the bankruptcy estate; (2) the same declaration with respect to the Trust property; (3) turnover of post-petition nonexempt Trust income payments received by Debtor; and (4) turnover from the Trust of the estate's interest in the Trust income and property.

In March 2020, Trustee moved for summary judgment on all claims in the adversary complaint. He argued that, under applicable California and Ninth Circuit authorities, the estate was entitled to 25% of Debtor's share of income and principal from the Trust. Ms. Sparhawk and Debtor jointly filed an opposition in which they conceded that the estate was entitled to 25% of the Trust income during Debtor's lifetime, subject to Debtor's support needs. But they argued that such amounts could not be calculated or turned over until Debtor received them, and they disputed that the estate was entitled to turnover of 25% of Debtor's share of the Trust principal because Debtor had no current rights in that property.

In Trustee's reply, he pinpointed the areas of disagreement by the parties: (1) whether the estate's right to receive 25% of the Debtor's share of the Trust income distributions terminates upon (a) the death of the Debtor, or (b) the Trust Termination Date; and (2) whether the estate's right to receive 25% of Debtor's share of Trust principal will terminate if Debtor dies before the Trust Termination Date, or whether the estate's right to 25% of Debtor's share of Trust principal is determined as of the petition date so

that it would not terminate if Debtor died before the Trust Termination Date.

The bankruptcy court issued a tentative decision granting the Trustee's motion in its entirety. After hearing argument, the court issued a memorandum decision and judgment in Trustee's favor.

Debtor timely appealed. A BAP motions panel subsequently granted the Intervenors' request to participate in this appeal.

## JURISDICTION

Ms. Sparhawk and the Intervenors do not dispute that the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(E) to determine what constitutes property of the estate and to adjudicate the Trustee's request for turnover. They contend, however, that the bankruptcy court lacked jurisdiction to construe the provisions of the Trust. Specifically, they argue that the bankruptcy court violated the probate exception to federal jurisdiction by interpreting the phrase "by right of representation."

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall v. Marshall,* 547 U.S. 293, 311–12 (2006).

As interpreted by the Supreme Court, the probate exception is not applicable given that the bankruptcy court was not engaging in the administration of a decedent's estate or disposing of property in the custody of a state probate court.

Despite the fact that bankruptcy court jurisdiction is a matter of federal law, Intervenors also argue that California Probate Code § 17000(a) supports their position that the bankruptcy court lacked jurisdiction to interpret the trust provisions because it provides that "[t]he superior court having jurisdiction over the trust pursuant to this part has exclusive jurisdiction of proceedings concerning the internal affairs of trusts." And California Probate Code § 17200(b) defines "the internal affairs of trusts" to include "construction of a trust instrument" and "[a]scertaining beneficiaries and determining to whom property shall pass or be delivered upon final or partial termination of the trust, to the extent the determination is not made by the trust instrument."

The bankruptcy court's jurisdiction is not governed by California law, but even if it were, we agree with Trustee that the applicable state statutes, read together, reveal that exclusive jurisdiction is limited to disputes among parties to the trust itself, such as between a beneficiary and a trustee. Subdivision (b) of California Probate Code § 17000 provides that the superior court has concurrent (not exclusive) jurisdiction over "[a]ctions and proceedings by or against creditors or debtors of trusts" and "[o]ther actions and proceedings involving trustees and third persons." In

7

contrast, California Probate Code § 17200(a) provides that "**a trustee or beneficiary** of a trust may petition the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust." (emphasis added). Subsection (b)(20) of § 17200 denies standing to a creditor to bring an action concerning the internal affairs of a trust.

This interpretation of California law is consistent with the probate exception, which "does not bar federal courts from adjudicating matters . . . otherwise within federal jurisdiction" with the exception of "the probate or annulment of a will and the administration of a decedent's estate" or "endeavoring to dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311–12.[4] Accordingly, we conclude that the bankruptcy court acted within its jurisdiction in interpreting the Trust provisions.

We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Were Intervenors denied due process in the bankruptcy court?

Did the bankruptcy court err in granting summary judgment for Trustee to the extent the judgment requires turnover of a portion of Trust income and principal after Debtor's death?

---

[4] Ms. Sparhawk also cites other California law to support her argument that the bankruptcy court lacked jurisdiction to interpret the Trust provisions, but none of the statutes she cites change our analysis, as her citations are to code sections applicable only when an estate is being probated.

## STANDARDS OF REVIEW

Whether a person's due process rights have been violated is a mixed question of law and fact that we review de novo. *Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.)*, 290 B.R. 718, 726 (9th Cir. BAP 2002).

We review de novo the bankruptcy court's decision to grant summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We must apply the same legal standards that all federal courts are required to apply in considering the propriety of summary judgment. *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014) (citing Civil Rule 56(a), made applicable in adversary proceedings by Rule 7056). An issue is genuine if there is enough evidence for a reasonable trier of fact to make a finding in favor of the non-moving party, and an issue is material if it might legally affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

## DISCUSSION

**A.  Intervenors have not shown that reversal is warranted on grounds that they were denied due process.**

The Intervenors contend that the portion of the bankruptcy court's judgment that impacts their contingent interests in the Trust is void for lack of due process. We disagree. As with jurisdiction, a distinction is made between the situation where a dispute arises among parties to a trust versus a dispute between the trust and a third party.

Trustee sued Ms. Sparhawk in her capacity as trustee of the Trust. In that capacity, Ms. Sparhawk has a fiduciary duty to the beneficiaries and, as such, represents their interests in a dispute such as this one. *See* Cal. Prob. Code §§ 16011, 16249. There is no requirement that the beneficiaries of a trust be joined in a lawsuit brought by a stranger to the trust against the trustee of an express trust. *See* Cal. Civ. Proc. Code § 369; *Straube v. Sec. First Nat'l Bank of L.A.*, 205 Cal. App. 2d 352, 360 (1962). Intervenors rely on *Roth v. Jelley*, 45 Cal. App. 5th 655 (2020), in support of their argument. But, as pointed out by Trustee, that case involved a situation where a contingent beneficiary had not been notified of a **probate proceeding** affecting his rights in a trust, not a dispute between a third-party creditor and the trustee of a testamentary trust. *Roth* has no application to these facts.

In any event, Intervenors have been permitted to participate in this appeal, and they have submitted briefing, which this Panel has considered.

10

Accordingly, they have not been deprived of the opportunity to assert their position in this matter.

**B.    The bankruptcy court erred in concluding that the estate could continue to collect a portion of Trust distributions after Debtor's death. [5]**

Under the Bankruptcy Code, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Although property of the estate is defined under federal law, we look to state law—here, California—to determine the nature and extent of a debtor's interest in property. *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1078 (9th Cir. 2000) (citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979)).

Contingent interests, including the right to distributions of property from a trust, are property of the estate. *Neuton v. Danning (In re Neuton)*, 922

---

[5] Ms. Sparhawk requested this Panel take judicial notice of a minute order entered in probate court on July 26, 2021, construing the Trust. The probate court found that upon the deaths of Debtor's siblings, their interests in the Trust terminated. Trustee opposes the request on the grounds that: (1) the probate court's ruling was limited to the interests of Debtor's deceased siblings; (2) the order is not final; and (3) the request includes arguments that were not made before the bankruptcy court. We may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Trustee does not contend that the minute order is not what it purports to be. We may thus take judicial notice that the minute order was entered and the probate court's ruling. Accordingly, the request for judicial notice is GRANTED. But we do not construe the ruling as persuasive, given that the order contains no analysis. Nor is the ruling binding on this Panel. We have not considered it in disposing of this appeal.

F.2d 1379, 1382-83 (9th Cir. 1990). But the estate's ability to realize upon such interests is subject to whatever limitations existed on the petition date; the estate obtains no greater rights than those held by the debtor before bankruptcy. *Foothill Cap. Corp. v. Clare's Food Mkt., Inc. (In re Coupon Clearing Serv., Inc.)*, 113 F.3d 1091, 1099 (9th Cir. 1997). Further, the bankruptcy estate's ability to realize on its interest is derived from the trustee's status as a hypothetical lien creditor. *See* § 544(a)(1). *See also Carmack v. Reynolds*, 2 Cal. 5th 844, 849 (2017) (general creditors, including a bankruptcy trustee standing as a hypothetical lien creditor, may reach a portion of assets of a spendthrift trust); *Cutter v. Seror (In re Cutter)*, 398 B.R. 6, 21 (9th Cir. BAP 2008) (the debtor in that case had unfettered access to trust assets; therefore, under California law, a creditor, and thus the bankruptcy trustee as a hypothetical lien creditor, could recover trust assets under § 544(a)(1)). Accordingly, the estate's ability to realize upon an interest in trust distributions is subject to the same limitations imposed on creditors under state law.

The parties agree that, under California law, because of the Trust's spendthrift provisions, the estate's interest is limited to 25% of any distributions of Trust income or principal, once they are paid to the Debtor, subject to any documented need for those funds for the support of Debtor and any dependents. *See Carmack*, 2 Cal. 5th at 856-57 (2017); *In re Neuton*, 922 F.2d at 1383-84. At issue in this appeal is the bankruptcy court's determination that the estate should continue to receive a share of those

distributions after Debtor dies (assuming he dies before the Trust Termination Date), when his share of Trust distributions is to be distributed equally to his then living issue, by right of representation, until the termination of the Trust. We have found no bankruptcy or California authorities addressing this issue.

Because the estate's interest is limited to whatever rights Debtor had on the petition date, we must ascertain the nature and extent of those rights. Debtor's right to receive future distributions of trust income and principal was vested as of the petition date; his parents were both deceased, the Trust was irrevocable, and he was receiving income distributions. At the same time, Debtor's right to receive income distributions was and is contingent upon the collection of rents from the Miramar Park Property, and his right to receive principal was and is contingent upon the expiration of the ground lease on that property.

Trustee contends that, as of the petition date, the bankruptcy estate became the legal owner of 25% of Debtor's share of distributions from the Trust, and thus the estate is entitled to receive that share until the principal is distributed after the Trust Termination Date, regardless of whether Debtor is alive, conditioned only upon the collection of rent and termination of the ground lease. But Trustee conflates "ownership" of a property interest with the estate's ability to realize upon it. California law imposes a further condition on the estate's ability to collect a portion of the trust distributions. A beneficiary's interest in trust income or principal is

13

neither transferable nor subject to enforcement of a money judgment until it is "paid to the beneficiary." Cal. Prob. Code §§ 15300, 15301. After Debtor dies, no distributions will be paid to him; instead, those amounts will be paid to his living issue. Trustee has cited no authority for the proposition that a creditor would be entitled to continue to collect a portion of trust distributions after a beneficiary dies. Instead, Trustee argues that the bankruptcy court correctly found that because the Trust does not provide for the termination of Debtor's interest upon his death, and his living children will take as his "representatives," their share will still be subject to a 25% carveout for the bankruptcy estate.

In reaching its conclusion that the bankruptcy estate could continue to collect a portion of Debtor's distributions after his death, the bankruptcy court relied on *Hernandez v. Hopper (In re Hernandez)*, BAP No. EC-12-1537-DJuMk, 2013 WL 1490995 (9th Cir. BAP Apr. 11, 2013). In *Hernandez*, this Panel affirmed the bankruptcy court's order sustaining the chapter 7 trustee's objection to a debtor's exemption of her contingent interest in an irrevocable spendthrift trust. The contingency was that the debtor had to survive her mother—who was living on the petition date—to receive a mandatory distribution of trust principal. The bankruptcy court rejected debtor's argument that the estate was not entitled to any portion of distributions from the trust due to the spendthrift provisions. Citing *Neuton*, we held that under California Probate Code § 15306.5, the estate

14

was entitled to 25% of any future distributions made to the debtor, despite the fact that the debtor's interest was contingent as of the petition date.

From this holding, the bankruptcy court concluded that Debtor's contingent future interest was fixed as of the petition date and, because the Trust does not require Debtor to survive to a certain date to take under the Trust, the only contingencies to payment were the collection of rent and the termination of the ground lease. Therefore, the estate would be entitled to continue collecting a portion of Trust distributions after Debtor's death.

This interpretation reads too much into the holding of *Hernandez*. That case did not resolve the question of when or how much the estate could collect from the trust once the debtor's interest was no longer contingent, i.e., upon her mother's death. Instead, the Panel concluded: "What, if anything, the Trustee can collect from the Trust for the benefit of the [debtor's] estate is an unresolved matter that is left for determination in future proceedings." *Id.* at *8. *Hernandez* simply articulated principles that are not disputed in this appeal: first, contingent interests are property of the estate, and second, the estate, as a hypothetical lien creditor, may collect a portion of distributions from a spendthrift trust. *Hernandez* did not hold that because the estate's interest is fixed as of the petition date, it is automatically entitled to collect on that interest under a "best case" scenario, unfettered by future events. True, obtaining a contingent interest does not preclude the ability to realize on it, but the estate obtains only

15

rights the debtor had under state law; the filing of a bankruptcy case does not create new ownership or distribution rights.

And contrary to Trustee's arguments and the bankruptcy court's conclusion, nothing in the Trust documents supports the conclusion that a portion of Trust distributions would be available to a creditor or a bankruptcy trustee after Debtor dies. As noted, the bankruptcy court concluded that the Trust's lack of an express contingency that Debtor must survive to continue receiving distributions meant that his interest did not terminate upon his death, and the estate could thereafter continue to receive a portion of those distributions. But we have found no authority to support that conclusion. In our view, a survival contingency is implicit in the provision that when Debtor dies, the distributions that would have gone to him are to go to his living issue. And whether Debtor's living issue take by right of representation or per capita is of no consequence in this context.

California Probate Code § 246(a) explains the meaning of distribution "per stirpes," "by representation," or by "right of representation," as follows:

> [T]he property to be distributed shall be divided into as many equal shares as there are living children of the designated ancestor, if any, and deceased children who leave issue then living. Each living child of the designated ancestor is allocated one share, and the share of each deceased child who leaves issue then living is divided in the same manner.

16

Subsection (c) of California Probate Code § 246 specifies that if a trust executed before January 1, 1986—such as the one at issue here—calls for property to be distributed or taken "per stirpes," "by representation," or by "right of representation," the property is to be distributed as described in subdivision (a), absent a contrary intent of the transferor.

California cases have contrasted this manner of distribution with the other form, "per capita."

> Taking "per stirpes" denotes that the descendants of a deceased person together take the share which the deceased person would have taken. This is taking by the right of representation. The antithesis of per stirpes is "per capita." In a per capita distribution, the property is divided into as many equal shares as there are children or surviving descendants of deceased children, with each child or descendant of a deceased child taking one share. This is taking in an heir's own individual right.

*Est. of Edwards*, 203 Cal. App. 3d 1366, 1372 (1988) (citations omitted); *see also Lombardi v. Blois*, 230 Cal. App. 2d 191, 206 (1964) ("absent any language indicating a contrary intent, the family roots or stocks are to be found among the ancestors of those persons who are to take the property or estate rather than among the takers themselves, irrespective of whether or not such ancestors were ever entitled to take." (citations omitted)).

> The term '*per stirpes*' denotes the **mode** of the descent and distribution of the intestate's estate where parties entitled take the share which their stock, if living, would have taken. The term does not refer to substitution parties or property, but merely describe[s] how distributees are to take, and denotes the

> mode of the division of the property which the law of descent and distribution **casts** upon them.

*In re Berk's Est.*, 196 Cal. App. 2d 278, 285 (1961) (citation omitted; emphasis in original); *see also Est. of Edwards*, 203 Cal. App. 3d at 1373 ("Per stirpes denotes only a mode of distribution.")

The bankruptcy court concluded that because the Trust provides for Debtor's living issue to take his share "by right of representation," and evinced no contrary intent, they would take as his representatives and not in their own individual right. The bankruptcy court extrapolated from this principle that Debtor's living issue would take the share to which Debtor would have been entitled had he survived, subject to a 25% carveout to the bankruptcy estate. But nothing in the pertinent statutes or case law suggests that taking by right of representation means that the designated successor beneficiaries' share would be subject to such a carveout; the cases make clear that the terms "by right of representation" and "per capita" denote only the mode of distribution, i.e., the number of shares to be distributed and to whom. Accordingly, the bankruptcy court read too much into those terms.

The bankruptcy court also looked to the language of the Trust and its amendments to determine whether that language evinced an intent to designate Debtor's living issue as alternate beneficiaries, under the premise that if it did, Debtor's interest would terminate upon his death, and the estate would not be entitled to a portion of Trust distributions thereafter.

18

Article V, Paragraph D, of the original Trust agreement provides: "Whenever the right of any beneficiary to payments from net income or principal hereunder shall terminate, either by reason of death or otherwise, all such payments accrued or undistributed by the Trustee at the date of such termination shall be distributed to the beneficiary entitled to the next successive interest hereunder[.]" While this language does not explicitly provide that a beneficiary's interest terminates upon death, that conclusion is implicit, and the bankruptcy court so found.

But the court found that the 1998 amendment to the Trust ("Third Amendment") contained a superseding provision: "I specifically intend and direct that the assets of my trust, including Miramar Park real property, shall be held for the benefit of my three children, in equal shares, share and share alike." The Third Amendment also provides that Trust income and principal are to be distributed to the Intended Beneficiaries "or the living issue of a deceased child by right of representation." We disagree with the bankruptcy court that these provisions conflict. Article IV, Paragraph H of the original Trust agreement provides that upon the death of the surviving spouse, the trust assets are to be divided into as many shares as there are children of the Trustors, with one share to be distributed to each living child, and one share to be distributed to the living issue of any deceased child "upon the principle of representation." In other words, the original Trust agreement already provided for distribution of a deceased child's share to his living issue by right of representation. The

19

Third Amendment, includes a republication of Article IV, Paragraph H.[6] When read in light of the original Trust agreement and the other amendments, the Third Amendment appears to have been intended simply to clarify the manner of distribution of the ground lease income and the Miramar Park Property and to restate the spendthrift provision and specify that it includes distributions of principal or income from that property.[7] We respectfully disagree with the bankruptcy court's interpretation that the Third Amendment superseded the Trust agreement's implicit provision that a beneficiary's interest terminates upon death.[8]

---

[6] Moreover, although the Third Amendment states that it "supersedes all trust provisions that conflict with Surviving Settlor's express intent and declaration herein[,]" it also states that provisions not addressed in that amendment (and certain provisions of the other two amendments) "shall remain in full force and effect."

[7] The spendthrift provision in the Trust agreement reads: "The interests of beneficiaries in principal or income shall not be subject to the claims of their creditors or others, nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered." The spendthrift provision in the Third Amendment reads: "No income beneficiary shall anticipate, assign, alienate, or encumber the title, principal or income of Trust assets, particularly Miramar Park, voluntarily or involuntarily, nor subject any of the Trust assets to creditor's claims, liability, attachment, execution, or process of law."

[8] Ms. Sparhawk cites *Berk's Estate*, 196 Cal. App. 2d 278, for the proposition that heirs are not liable for the debts of their ancestors. Trustee argues that the case is distinguishable. We did not find the case enlightening with respect to the issues in this appeal and have not relied on it (except as cited above) in reaching the conclusions in this disposition. That said, we have found nothing in the Trust provisions or California law to suggest that when he dies, Debtor's interest in Trust distributions will be part of his probate estate and thus subject to creditor claims.

## CONCLUSION

For these reasons, the bankruptcy court erred in holding that the bankruptcy estate would be entitled to continue receiving distributions from Debtor's share of Trust distributions even after his death.

We therefore REVERSE in part the bankruptcy court's judgment to the extent it requires turnover of Trust income and property (as described in paragraphs 2 and 3 of the judgment) beyond Debtor's lifetime.